1  Brent H. Blakely (SBN 157292)
   bblakely@blakelylawgroup.com
2  Cindy Chan (SBN 247495)
   cchan@blakelylawgroup.com
3  BLAKELY LAW GROUP
   1334 Parkview Avenue, Suite 280
4  Manhattan Beach, California 90266
   Telephone:  (310) 546-7400
5  Facsimile:  (310) 546-7401

6  *Attorneys for Plaintiff*
   *Deckers Outdoor Corporation*
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 DECKERS OUTDOOR CORPORATION,  ) Case No. 2:13-CV-06303 JVS (VBKx)
   a Delaware Corporation,        )
12                                )**JOINT STIPULATION RE**
                    Plaintiff,    )**PLAINTIFF'S MOTION TO**
13                                )**COMPEL PRODUCTION OF**
            v.                    )**DOCUMENTS AND FURTHER**
14                                )**RESPONSES TO SPECIAL**
   RUE SERVICES CORPORATION dba   )**INTERROGATORIES BY**
15 RUE21, a Delaware Corporation; GINA )**DEFENDANT GINA GROUP LLC**
   GROUP LLC, a New York Limited  )
16 Liability Company; STYLES FOR LESS )
   INC., a California Corporation; LTD )         [DISCOVERY MATTER]
17 COMMODITIES, INC., an Illinois )
   Corporation; and DOES 1-10, inclusive, )**HEARING:**
18                                )
                    Defendants.   ) Date:   Tuesday, September 9, 2014
19                                ) Time:   10:00 a.m.
                                  ) Ctrm.:  590 - Roybal
20                                )
                                  )     **Hon. Victor B. Kenton**
21                                )
                                  ) Discovery Cut-Off:      11/07/2014
22                                ) Pre-Trial Conference:   02/17/2015
                                  ) Trial Date:             03/03/2015
23 ─────────────────────────────── )

24 TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

25       PLEASE TAKE NOTICE that on **Tuesday**, **September 9, 2014** at **10:00 a.m.**,

26 in Courtroom 580 of the above-entitled Court, located at 255 East Temple Street, Los

27 Angeles, California 90012, Plaintiff Deckers Outdoor Corporation will and hereby

28 does move the Court pursuant to Federal Rule of Civil Procedure 37 and Local Civil

1   Rule 37-2, for an Order requiring Defendant Gina Group LLC to produce documents

2   responsive to Deckers' **Requests for Production Nos. 10, 15, 16, 25-31, 37** and to

3   serve further responses to Deckers' **Interrogatories Nos. 14, 15, 17**.

4        This Motion is made following the conference of counsel pursuant to

5   L.R. 37-1, which took place on July 3, 2014.

6        The Motion will be based on this Notice, the Joint Stipulation prepared by the

7   parties pursuant to L.R. 37-2 as well as any supporting declarations and exhibits, the

8   files and records in this action, and any further evidence or argument that this Court

9   may properly receive at or before the hearing.

10

11   DATED:     July 29, 2014          BLAKELY LAW GROUP

12

13                              By:   */s/ Cindy Chan*_____
                                      Brent H. Blakely
14                                    Cindy Chan
                                      ***Attorneys for Plaintiff***
15                                    ***Deckers Outdoor Corporation***

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF CONTENTS**

I.    DECKERS' INTRODUCTORY STATEMENT ......................................1

II.   GINA GROUP'S INTRODUCTORY STATEMENT ..............................3

III.  DECKERS' MOTION TO COMPEL PRODUCTION OF
      DOCUMENTS BY GINA GROUP IN RESPONSE TO REQUESTS
      NOS. 10, 15, 16, 25-31, AND 37 ..................................4

      DECKERS' REQUEST FOR PRODUCTION NO. 10: ..........................4

      GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION
           NO. 10: ....................................................4

      DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION
           NO. 10: ....................................................5

      GINA GROUP'S CONTENTIONS RE REQUEST FOR
           PRODUCTION NO. 10: .........................................8

      DECKERS' REQUEST FOR PRODUCTION NO. 15: .........................12

      GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION
           NO. 15: ...................................................12

      DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION
           NO. 15: ...................................................12

      GINA GROUP'S CONTENTIONS RE REQUEST FOR
           PRODUCTION NO. 15: ........................................15

      DECKERS' REQUEST FOR PRODUCTION NO. 16: .........................19

      GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION
           NO. 16: ...................................................19

      DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION
           NO. 16: ...................................................19

      GINA GROUP'S CONTENTIONS RE REQUEST FOR
           PRODUCTION NO. 16: ........................................20

      DECKERS' REQUEST FOR PRODUCTION NO. 25: .........................23

i

GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION
NO. 25: ................................................................................................24

DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION
NO. 25: ................................................................................................24

GINA GROUP'S CONTENTIONS RE REQUEST FOR
PRODUCTION NO. 25: ....................................................................26

DECKERS' REQUEST FOR PRODUCTION NO. 26: ...........................30

GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION
NO. 26: ................................................................................................30

DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION
NO. 26: ................................................................................................31

GINA GROUP'S CONTENTIONS RE REQUEST FOR
PRODUCTION NO. 26: ....................................................................33

DECKERS' REQUEST FOR PRODUCTION NO. 27: ...........................36

GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION
NO. 27: ................................................................................................37

DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION
NO. 27: ................................................................................................37

GINA GROUP'S CONTENTIONS RE REQUEST FOR
PRODUCTION NO. 27: ....................................................................37

DECKERS' REQUEST FOR PRODUCTION NO. 28: ...........................41

GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION
NO. 28: ................................................................................................42

DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION
NO. 28: ................................................................................................42

GINA GROUP'S CONTENTIONS RE REQUEST FOR
PRODUCTION NO. 28: ....................................................................42

DECKERS' REQUEST FOR PRODUCTION NO. 29: ...........................46

GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION
NO. 29: ................................................................................................46

DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 29: ...................................................................47

GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 29: ..............................................47

DECKERS' REQUEST FOR PRODUCTION NO. 30: ..........................51

GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 30: ...................................................................51

DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 30: ...................................................................52

GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 30: ..............................................52

DECKERS' REQUEST FOR PRODUCTION NO. 31: ..........................56

GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 31: ...................................................................56

DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 31: ...................................................................57

GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 31: ..............................................57

DECKERS' REQUEST FOR PRODUCTION NO. 37: ..........................61

GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 37: ...................................................................61

DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 37: ...................................................................62

GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 37: ..............................................64

IV.   DECKERS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES NOS. 14, 15, AND 17 ........................................68

DECKERS' SPECIAL INTERROGATORY NO. 14: ..........................68

GINA GROUP'S RESPONSE TO SPECIAL INTERROGATORY NO. 14: ...................................................................68

DECKERS' CONTENTIONS RE SPECIAL INTERROGATORY
        NO. 14: ...................................................................................68

GINA GROUP'S CONTENTIONS RE SPECIAL
        INTERROGATORY NO. 14: .......................................................70

DECKERS' SPECIAL INTERROGATORY NO. 15: ............................74

GINA GROUP'S RESPONSE TO SPECIAL INTERROGATORY
        NO. 15: ...................................................................................74

DECKERS' CONTENTIONS RE SPECIAL INTERROGATORY
        NO. 15: ...................................................................................75

GINA GROUP'S CONTENTIONS RE SPECIAL
        INTERROGATORY NO. 15: .......................................................77

DECKERS' SPECIAL INTERROGATORY NO. 17: ............................81

GINA GROUP'S RESPONSE TO SPECIAL INTERROGATORY
        NO. 17: ...................................................................................81

DECKERS' CONTENTIONS RE SPECIAL INTERROGATORY
        NO. 17: ...................................................................................81

GINA GROUP'S CONTENTIONS RE SPECIAL
        INTERROGATORY NO. 17: .......................................................82

# I.   DECKERS' INTRODUCTORY STATEMENT

On August 28, 2013, Plaintiff Deckers Outdoor Corporation ("Deckers") initiated the present action against Defendant Rue Services Corporation dba Rue21 ("Rue21") after discovering the sale of footwear bearing designs which Deckers has alleged infringe upon its Bailey Button Boot Trade Dress (shown below) and Bailey Button Design Patents (D599,999 and D616,189) (hereinafter "Disputed Products").

  

Through the course of discovery, Deckers discovered that Rue21 had obtained the Disputed Products from Gina Group LLC ("Gina Group").  Deckers filed an Amended Complaint thereafter on March 3, 2014 wherein Gina Group was added as a party defendant along with two other retailers, Styles for Less and LTD Commodities, who were also discovered to have been selling Disputed Products.

In the present motion, Deckers seeks to compel the production of documents and information with respect to boots sold by Gina Group (Request No. 10), Gina Group's inspection, review, comparison, consideration, and/or copying of UGG® products and/or its designs (Request Nos. 15, 16, 26, 27, 28 and Interrogatory No. 14), communications or discussions regarding the UGG® brand and/or its products/designs (Request Nos. 25, 29, 30, 31), evidence of confusion between Gina Group and Deckers and their respective products (Request No. 37), instances wherein Gina Group used the word "UGG" to describe or identify its own products (Interrogatory No. 15), and Gina Group's procedures to ensure that its products do not infringe on intellectual property rights of others (Interrogatory No. 17).

1   While Gina Group has asserted a series of boilerplate objections to these
2   discovery requests, the core issue upon which the parties' dispute revolves is the scope
3   of said requests and the relevance of the information sought.  (See Chan Dec., Exs. 3-
4   7)  Gina Group contends that the aforementioned discovery requests should be limited
5   specifically to the "Disputed Products" which have been identified by Deckers.
6   However, such a limitation on discovery is contrary to the general principles set forth
7   by the FRCP, where "relevancy" is to be broadly construed, and a request for
8   discovery should be considered relevant if there is ***any possibility*** that the information
9   sought may be relevant to the claim or defense of any party.

10   Gina Group's extremely narrow construction of relevancy would thus prevent
11   the discoverability of highly relevant documents, including, for example, documents
12   containing expressions of confusion between the parties and their respective brands,
13   documents that indicate the copying of UGG® products and designs by Gina Group,
14   and documents wherein Gina Group discusses imitating the UGG brand.  These types
15   of documents are of course relevant to issues of confusion, willfulness, and damages
16   with respect to Deckers' claims.  Indeed, the discovery of additional infringing
17   products is contemplated by the federal rules, where Deckers may seek to amend its
18   complaint in light of new facts acquired through the discovery process, and courts have
19   routinely granted motions to compel documents related to non-disputed products in
20   infringement actions.

21   Based on the foregoing, Deckers respectfully requests this Court to grant
22   Deckers' motion to compel the production of documents responsive to Requests for
23   Production Nos. 10, 15, 16, 25-31, 37 by Gina Group as well as further written
24   responses to Special Interrogatories Nos. 14, 15, 17 to provide the requested
25   information.

26

27

28

## II.   **GINA GROUP'S INTRODUCTORY STATEMENT**

In this design infringement case, Deckers alleges that Gina and its co-defendants (three of Gina's retailer customers) have offered for sale and sold a boot design that infringes Deckers' purported Bailey Button Boot Trade Dress and Bailey Button Design Patents.  Despite the narrow scope of its claims, Deckers' discovery of Gina can accurately be described as a "scorched earth" approach, seeking far-reaching and wholly irrelevant discovery of Gina and its business practices.  Indeed, the principal focus of the discovery Deckers seeks has little to do with the boot design at issue — rather, Deckers seeks to discover every document and communication in Gina's possession in which the term "UGG" is mentioned or any UGG-branded product is mentioned or discussed, even though Deckers' own Complaint concedes that it owns no rights in the basic underlying UGG boot design, which is used rampantly (and lawfully) by numerous parties.  This motion arises as a result.

The zealous overreach of Deckers' discovery can be attributed to two factors — (1) litigation gamesmanship intended to exhaust Gina's patience and resources, and (2) a fundamental misunderstanding of the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1).  As to the latter, Deckers fails to acknowledge the significance of the 2000 amendment of Federal Rule of Civil Procedure 26(b), which "pull[ed] back the presumptive outer relevance-boundaries of civil discovery … [by] substituting the words 'claim or defense' for the phrase 'subject matter involved in the pending action' in the general description of the presumptively permissible scope of discovery." *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006).  As explained in the Advisory Committee's Notes to Amendments Effective December 1, 2000, this amendment "signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings."  "Stated more crudely, the primary purposes of the changes were to discourage lawyers from using discovery to 'fish' for new claims or defenses and/or to run up unjustifiable litigation bills." *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d

1   1100, 1102 (N.D. Cal. 2006); *see also Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3

2   (C.D. Cal. Apr. 19, 2007) ("Fishing expeditions to discover new claims … are not

3   permitted.").  Yet, this is precisely what Deckers is attempting to embark on here.

4           Deckers' failure to acknowledge the significance of the 2000 amendment of

5   Rule 26(b) is fatal to its position, and no matter how many times it bandies about the

6   mantra that relevancy is to be broadly construed, or that the requested discovery

7   somehow goes to Gina's intent, it cannot meet its burden of establishing that any of

8   Gina's non-accused footwear products has any relevance to its claims for infringement

9   of its purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents.

10  The fact that Deckers has accused Gina of infringing two particular footwear styles

11  does not entitle Deckers to audit Gina's entire footwear portfolio and design process in

12  the hope that it will provide fodder for additional claims.

13          As explained below, the disputed discovery seeks documents and information

14  that are entirely irrelevant to Deckers' design infringement claims in this case.

15  Accordingly, Gina respectfully requests that this Court deny Deckers' motion to

16  compel in its entirety, and award Gina its reasonable expenses incurred in opposing

17  this motion, including its attorneys' fees, pursuant to Federal Rule of Civil Procedure

18  37(a)(5)(B).

19  **III.   DECKERS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

20        **BY GINA GROUP IN RESPONSE TO REQUESTS NOS. 10, 15, 16, 25-31,**

21        **and 37**

22  **DECKERS' REQUEST FOR PRODUCTION NO. 10:**

23          DOCUMENTS, including line sheets, catalogues, brochures, web printouts,

24  and/or line guides sufficient to identify all boots offered for sale and/or sold by GINA

25  to the other named co-defendants in the COMPLAINT.

26  **GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

27          Gina Group incorporates by reference the above-stated General Objections as if

28  fully set forth herein. Gina Group further objects to the Request on the basis that it is

1  duplicative of Request Nos. 8 and 9. Gina Group further objects to this Request on the

2  grounds that it is overly broad and unduly burdensome in that it is not reasonably

3  calculated to lead to the discovery of admissible evidence and seeks information that is

4  not relevant to the subject matter of this lawsuit. Gina Group further objects to this

5  Request on the basis that it is overly broad and unduly burdensome in scope in that it

6  seeks documents sufficient to identify "all boots" offered for sale and/or sold by Gina

7  Group to its co-defendants in this action over a six year period without regard to

8  whether they bear any conceivable resemblance to Deckers' purported Bailey Button

9  Boot Trade Dress and/or Bailey Button Design Patents.

10  **DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 10:**

11       At the outset, Gina Group's boilerplate objections that the requests are "overly

12  broad and unduly burdensome," are unsubstantiated.  General or boilerplate objections

13  are improper-especially when a party fails to submit any evidentiary declarations

14  supporting such objections. [Paulsen v. Case Corp., 168 F.R.D. 285, 289

15  (C.D.Cal.1996); see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894

16  F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were overly broad,

17  burdensome, oppressive, and irrelevant were insufficient to meet objecting party's

18  burden of explaining why discovery requests were objectionable); Panola Land Buyers

19  Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir.,1985) (conclusory recitations of

20  expense and burdensomeness are not sufficiently specific to demonstrate why

21  requested discovery is objectionable); Josephs v. Harris Corp., 677 F.2d 985,992 (3rd

22  Cir.1982) ("mere statement by a party that the interrogatory was overly broad,

23  burdensome, oppressive and irrelevant" is not adequate to voice a successful

24  objection")]

25       In any event, the parties' discussions at the L.R. 37-1 conference regarding this

26  Request primarily revolved around Gina Group's objections that (1) boots sold by

27  Gina Group that had not been identified to date as "Disputed Products" were not

28  relevant to the instant action; and (2) since Gina Group does not keep catalogues, line

1    sheets, or line guides, the search for documents sufficient to identify the styles of boots

2    it has sold would be unduly burdensome.  (See Chan Dec., Exs. 6 and 7)

3          The information sought in Request No. 10 is relevant within the definition the

4    federal rules.  "Relevancy is broadly construed, and a request for discovery should be

5    considered relevant if there is *any possibility* that the information sought may be

6    relevant to the claim or defense of any party.  A request for discovery should be

7    allowed unless it is clear that the information sought can have no possible bearing on

8    the claim or defense of a party."  [In re Toys R Us–Delaware, Inc. Fair & Accurate

9    Credit Transactions Act (FACTA) Litig., 2010 WL 4942645, *1 (C.D.Cal., 2010); see

10   also Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir., 2005)

11   ("Litigants may obtain discovery regarding any matter, not privileged, that is relevant

12   to the claim or defense of any party. Relevant information for purposes of discovery is

13   information reasonably calculated to lead to the discovery of admissible evidence.")

14   (internal quotation marks and citations omitted)]

15         To date, the only "Disputed Products" of which Deckers is currently aware are

16   those it discovered through its own independent investigation were being offered for

17   sale by Defendants Rue21, Styles for Less, and LTD Commodities (collectively

18   "Retailer Defendants").  Where Defendants dispute whether or not said "Disputed

19   Products" themselves are infringing, it is unlikely that Defendants will volunteer all the

20   potentially infringing products it has sold of which Deckers is currently unaware.

21   Deckers is entitled to understand the entire scope and extent of Defendants' infringing

22   activities, and if there are any more styles of boots that infringe upon its Bailey Button

23   Trade Dress/Bailey Button Design Patents.  [See e.g. Independent Living Center of

24   Southern California v. City of Los Angeles, Cal., 296 F.R.D. 632, 635 (C.D.Cal.,

25   2013) citing to Vallabharpurapu v. Burger King Corp., 276 F.R.D. 611, 615

26   (N.D.Cal.2011) ( "discovery is not limited to issues raised by the pleadings, for

27   discovery itself is designed to help define and clarify the issues.")]  Gina Group should

28   not be the one to decide whether or not a product could be potentially infringing, as

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL
FURTHER INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS**

1    they are likely to cherry pick the products which they wish to disclose and are unlikely

2    to reveal to Deckers all of their infringing activities.

3          Indeed, the discovery of additional infringing products is contemplated by the

4    rules, where Deckers may seek to amend its complaint in the event that through

5    discovery it finds Gina Group sold additional infringing products. [See O2 Micro Int'l

6    Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1366 (Fed.Cir., 2006) (where

7    Court's conclusion that the scope of discovery may include products and services

8    "reasonably similar" best comports with the "notice pleading and broad discovery

9    regime created by the Federal Rules" and the "right to develop new information in

10   discovery.); STMicroelectronics, Inc. v. Mortorola, Inc., 307 F.Supp.2d 845, 853

11   (E.D.Tex., 2004) (granting leave to amend because discovery revealed that additional

12   products might have been infringed in a patent suit); Aristocrat Technologies v. Int'l

13   Game Tech., 2009 WL 3573327 (N.D. Cal. Oct. 30, 2009) (granting the motion to

14   compel documents related to non-disputed products because discovery may yield

15   admissible evidence);  SAP Aktiengesellschaft v. i2 Technologies, Inc., 250 F.R.D.

16   472 (N.D. Cal. 2008) (Plaintiff in patent infringement action was entitled to file a

17   second amendment after infringement of another patent was found);  Infineon

18   Technologies AG v. Volterra Semiconductor Corp., 2012 WL 5988461 (N.D. Cal.

19   Nov. 29, 2012)]

20         In a patent infringement case, relevant discovery includes any products

21   reasonably similar to the disputed products. [Epicrealm Licensing, LLC v. Autoflex

22   Leasing, Inc., 2007 WL 2580969, *3 (E.D.Tex.2007)]  Courts permit the scope of

23   discovery to include not only disputed products, but non-disputed products as well.

24   [Dr. Sys., Inc. v. Fujifilm Med. Sys. USA, Inc., 70 Fed. R. Serv. 3d 348 (S.D. Cal.

25   2008); see L.G. Elec., Inc. v. Q-lity Computer, Inc., 211 F.R.D. 360, 368 (N.D.Cal.,

26   2002) (noting that discovery is not necessarily limited to products specifically

27   identified in initial patent infringement disclosures)]

28

1    In an effort to address Gina Group's objection that the Request is unduly

2    burdensome, Deckers has agreed to narrow the scope of this Request to boot products

3    sold within the last two years.  (See Chan Dec., Ex. 6 (July 3, 2014 letter))  Despite

4    Deckers' proposed limitation, Gina Group continues to refuse to comply with this

5    Request.  (See Chan Dec., Ex. 7 (July 10, 2014 letter))

6    **GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 10:**

7    This Request, as subsequently modified by Deckers, calls for production of

8    documents sufficient to "identify ***all boots*** offered for sale and/or sold by GINA to the

9    other named co-defendants" in this action, over a two year period, regardless of

10   whether such boots bear any resemblance to either of the two footwear designs that

11   Deckers purports to own and are at issue in this case.  In other words, although

12   Deckers' claims against Gina are limited to allegations of infringement of its purported

13   Bailey Button Boot Trade Dress and/or Bailey Button Design Patents, Deckers

14   nevertheless seeks unfettered discovery of ***every boot*** product Gina has sold to any of

15   the Retailer Defendants over a two year period, regardless of styling.  In support of its

16   overreaching Request, Deckers halfheartedly contends, without explanation, that

17   Gina's other boot designs are relevant to Deckers' "understanding of the extent/scope

18   of Gina Group's infringing activities".  Chan Decl. Ex. 5.  As explained below, that is

19   simply not the case, and since this Request is nothing more than an impermissible

20   "[f]ishing expedition[] to discover new claims" against Gina, it should not be allowed.

21   *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007); *see also*

22   *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not

23   condone the use of discovery to engage in 'fishing expeditions.'").

24   The zealous overreach of this Request (and many others discussed below)

25   appears to be grounded in Deckers' fundamental misunderstanding of the scope of

26   discovery permissible under Federal Rule of Civil Procedure 26(b)(1) — namely, that

27   "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to

28   any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers'

1 interpretation, this principle "is subject to limitation" (*Rivera*, 364 F.3d at 1063), and,
2 where, as here, the relevancy of the requested discovery is not apparent, "it is the
3 burden of the party seeking discovery to show the relevancy of the request." *Krause v.*
4 *Nevada Mutual Ins. Co.*, 2014 WL 496936, *3 (D. Nev. Feb. 6, 2014). In this case,
5 Deckers' only "claims" relate to the alleged infringement of its one button and three
6 button Bailey Boot Design. Deckers has failed to meet this threshold burden of
7 showing the relevance of this Request "to [its] claim[s]", as it does not even attempt to
8 articulate the relevance of Gina's sale of boot designs that have no relation to Deckers'
9 purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents.
10 Deckers' application should be denied on this basis alone.
11     Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–*
12 *Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL
13 4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly
14 construed, and a request for discovery should be considered relevant if there is any
15 possibility that the information sought may be relevant to the claim or defense of any
16 party", it disagrees with the misleading gloss Deckers attempts to place on this
17 language, and notes Deckers' failure to acknowledge the significance of the critical
18 clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the
19 *claim or defense* of any party".
20     As the court explained in *Bernstein v. Travelers Ins. Co.*:
21       It is not immaterial to the issues we address here that in the year
22       2000 the judiciary and Congress made changes in the language
23       of Rule 26(b) that clearly were intended to pull back the
24       presumptive outer relevance-boundaries of civil discovery. The
25       change that most obviously signaled this intent consisted of
26       substituting the words "claim or defense" for the phrase "subject
27       matter involved in the pending action" in the general description
28       of the presumptively permissible scope of discovery. Fed. R.

1    Civ. P. 26(b).  The Advisory Committee Notes that

2    accompanied these amendments report that the primary target of

3    the changes was discovery that swept "far beyond the claims

4    and defenses of the parties," discovery that imposed

5    unjustifiable expenses and delays and that sometimes seemed

6    designed not to fairly litigate the issues presented by the

7    pleadings but to "develop new claims or defenses." Fed. R. Civ.

8    Pro. 26(b) advisory committee's note to amendments effective

9    December 1, 2000.  Stated more crudely, ***the primary purposes***

10   ***of the changes were to discourage lawyers from using***

11   ***discovery to "fish" for new claims or defenses and/or to run up***

12   ***unjustifiable litigation bills***.

13   *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

14   (emphasis added).

15         The Advisory Committee's Notes to Amendments Effective December 1, 2000,

16   put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

17   "signals to the parties that they have ***no entitlement to discovery to develop new***

18   ***claims*** or defenses that are not already identified in the pleadings."  Emphasis added.

19   *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

20   Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

21   that may expose the defendant to claims not previously asserted in the plaintiff's

22   complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

23   permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

24   Yet, this is precisely what Deckers is attempting to embark on here.

25         Deckers further contends that relevant discovery in patent infringement cases

26   includes "any products reasonably similar to the disputed products".  Deckers,

27   however, cites to no cases that permit the type of untethered discovery that it seeks

28   here.  For example, contrary to Deckers' insinuation, in *Dr. Sys., Inc. v. Fujifilm Med.*

*Sys. USA, Inc.* the court merely acknowledged that the plaintiff's discovery "should not be limited to only the products they expressly accused". *Dr. Sys., Inc. v. Fujifilm Med. Sys. USA, Inc.*, 2008 WL 1734241, *3 (S.D. Cal. Apr. 10, 2008). Gina does not dispute this; indeed, if it did, Gina would be taking the position that Deckers is entitled to no discovery at all, since Deckers' First Amended Complaint is devoid of any identification or description of the so-called Disputed Products sold by Gina. Ederer Decl. Ex. A (First Amended Complaint). In fact, contrary to Deckers' wholly unsubstantiated accusation that Gina cannot be trusted to produce footwear styles that conceivably bear some resemblance to Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents, it is Gina, and not Deckers, that has been left with the task of determining which styles of boots it has sold are encompassed within the vague infringement claims set forth in Deckers' First Amended Complaint.

In any event, this Request is much broader than the Request made in *Dr. Sys., Inc.*, in that Deckers' Request is not tailored to identify additional footwear styles sold by Gina that may bear some resemblance to Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents, but rather intended "to 'fish' for new claims or defenses and/or to run up unjustifiable litigation bills" by searching for any other boot products that may, in its view, resemble some other, unspecified Deckers product. None of this is permitted under Rule 26(b). *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006).

Deckers' failure to acknowledge the significance of the 2000 amendment of Rule 26 is fatal to its position, and no matter how many times it bandies about the mantra that relevancy is to be broadly construed, Deckers has failed to meet its burden of establishing that any of Gina's non-accused footwear products has any relevance to its claims for infringement of its purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents. Accordingly, Deckers is not entitled to this irrelevant discovery. *See Monte H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests seeking irrelevant information are inherently undue and

1  burdensome.").

2  **DECKERS' REQUEST FOR PRODUCTION NO. 15:**

3      DOCUMENTS RELATING to the existence of and/or work conducted by

4  GINA that analyzes, analyzed, considers, considered, copies, copied, compares, or

5  compared any UGG® product or product feature in developing its footwear, including

6  but not limited to the DISPUTED PRODUCTS.

7  **GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

8      Gina Group incorporates by reference the above-stated General Objections as if

9  fully set forth herein. Gina Group further objects to this Request on the basis that it is

10  incomprehensible as drafted. Gina Group further objects to the use of the defined term

11  "Disputed Products" on the grounds that it is vague and ambiguous to the extent it

12  refers to products other than those depicted in Section I(A)(11) of the Requests. Gina

13  Group further objects to this Request on the grounds that it is overly broad and unduly

14  burdensome in that it is not reasonably calculated to lead to the discovery of

15  admissible evidence and seeks information that is not relevant to the subject matter of

16  this lawsuit. Gina Group further objects to this Request to the extent it seeks the

17  production of documents that are privileged or exempt from discovery under the

18  attorney-client privilege, work product doctrine, or other privilege or exemption under

19  applicable law.

20      Subject to and without waiving the foregoing objections, Gina Group states that

21  it will produce relevant, responsive, non-privileged documents, if any, to the extent

22  such documents exist within its possession, custody, or control and are located

23  following a reasonably diligent search, relating to Gina Group's consideration of any

24  products featuring the purported Bailey Button Boot Trade Dress and/or Bailey Button

25  Design Patents in developing the "Disputed Products."

26  **DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 15:**

27      At the outset, Gina Group's boilerplate objections that the requests are "overly

28  broad and unduly burdensome," are unsubstantiated.  General or boilerplate objections

are improper-especially when a party fails to submit any evidentiary declarations supporting such objections. [Paulsen v. Case Corp., 168 F.R.D. 285, 289 (C.D.Cal.1996); see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir.,1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); Josephs v. Harris Corp., 677 F.2d 985,992 (3rd Cir.1982) ("mere statement by a party that the interrogatory was overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection")]  Furthermore, "[t]he responding party must exercise reason and common sense in answering discovery. If necessary, the responding party may provide definitions in order to clarify their answers." [Brown v. Castillo, 2006 WL 1480444 (E.D.Cal., 2006); Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295, 310 (D. Kan., 1996)]

Gina Group has stated, both in its responses and during the parties L.R. 37-1 communications, that only Gina Group's analysis/consideration of UGG® products in the design of the specific "Disputed Products" at issue in the present action are relevant, and that its consideration of UGG® products in the design of products that have not been identified as "Disputed Products" is not relevant.  (See Chan Dec., Ex. 7 (Ederer's July 10, 2014 letter))

Indeed, Gina Group's interpretation of relevance is too narrow where "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party.  A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." [In re Toys R Us–Delaware, Inc. Fair & Accurate Credit Transactions Act

1   (FACTA) Litig., 2010 WL 4942645, *1 (C.D.Cal., 2010); see also Surfvivor Media,

2   Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir., 2005) ("Litigants may obtain

3   discovery regarding any matter, not privileged, that is relevant to the claim or defense

4   of any party. Relevant information for purposes of discovery is information reasonably

5   calculated to lead to the discovery of admissible evidence.") (internal quotation marks

6   and citations omitted)]

7        Deckers has alleged infringement of both its Bailey Button Boot Trade Dress

8   and Bailey Button Design Patents in the present action.  Issues of willfulness,

9   knowledge, and intent are relevant both to determination of liability and damages,

10  where Defendant's intent in selecting the disputed mark is one of several factors

11  considered in the determination of likelihood of confusion with respect to

12  trademark/trade dress infringement claims [AMF Inc. v. Sleekcraft Boats, 599 F.2d

13  341 (9th Cir.,1979)] and willfulness may lead to enhanced damages and attorneys' fees

14  under both the Lanham Act and statute governing infringement of patents [See 15

15  U.S.C. § 1117 and 35 U.S.C. § 284, 285]  Furthermore, Deckers' unfair competition

16  claims are based on allegations that Defendants have intentionally knocked off the

17  UGG® Bailey Button Styles in an effort to trade off of the goodwill established in said

18  UGG® designs, which are well known and highly recognized by the public.  (See First

19  Amended Complaint, Dckt# 40)

20       Thus, *any* instances wherein Gina Group has copied UGG® product designs in

21  the conception/design of its own products is probative to the issue of intent to knock-

22  off Deckers' UGG® products and designs, whether it be with respect to the specific

23  disputed products at issue or not.  [See e.g. Independent Living Center of Southern

24  California v. City of Los Angeles, Cal., 296 F.R.D. 632, 635 (C.D.Cal., 2013) citing to

25  Vallabharpurapu v. Burger King Corp., 276 F.R.D. 611, 615 (N.D.Cal.2011)

26  ("discovery is not limited to issues raised by the pleadings, for discovery itself is

27  designed to help define and clarify the issues.")]

28

1   **<u>GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 15:</u>**

2        This Request calls for production of all documents that relate to Gina's analysis

3   and/or consideration of any UGG-branded product or product feature in the

4   development any footwear, regardless of whether any such UGG-branded product or

5   product feature relates to any alleged intellectual property right of Deckers, much less

6   Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

7   Patents (the only designs at issue in this case).  In response to this Request, Gina

8   agreed to produce non-privileged documents, if any, that relate to Gina's analysis

9   and/or consideration of any UGG-branded products that featured the purported Bailey

10  Button Boot Trade Dress and/or Bailey Button Design Patents in the development of

11  the so-called Disputed Products.  Once again, however, Deckers wants more.

12       The zealous overreach of this Request appears to be grounded in Deckers'

13  fundamental misunderstanding of the scope of discovery permissible under Federal

14  Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery

15  regarding any nonprivileged matter that is relevant to any party's claim or defense."

16  Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject

17  to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the

18  requested discovery is not apparent, "it is the burden of the party seeking discovery to

19  show the relevancy of the request."  *Krause v. Nevada Mutual Ins. Co.*,  2014 WL

20  496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the

21  alleged infringement of its one button and three button Bailey Boot Design.  Deckers

22  has failed to meet this threshold burden of showing the relevance of this Request "to

23  [its] claim[s]", as it does not even attempt to articulate the relevance of Gina's sale of

24  boot designs that have no relation to Deckers' purported Bailey Button Boot Trade

25  Dress and/or Bailey Button Design Patents.  Deckers' application should be denied on

26  this basis alone.

27       Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–*

28  *Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL

4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party", it disagrees with the misleading gloss Deckers attempts to place on this language, and notes Deckers' failure to acknowledge the significance of the critical clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the *claim or defense* of any party".

As the court explained in *Bernstein v. Travelers Ins. Co.*:

> It is not immaterial to the issues we address here that in the year 2000 the judiciary and Congress made changes in the language of Rule 26(b) that clearly were intended to pull back the presumptive outer relevance-boundaries of civil discovery. The change that most obviously signaled this intent consisted of substituting the words "claim or defense" for the phrase "subject matter involved in the pending action" in the general description of the presumptively permissible scope of discovery. Fed. R. Civ. P. 26(b). The Advisory Committee Notes that accompanied these amendments report that the primary target of the changes was discovery that swept "far beyond the claims and defenses of the parties," discovery that imposed unjustifiable expenses and delays and that sometimes seemed designed not to fairly litigate the issues presented by the pleadings but to "develop new claims or defenses." Fed. R. Civ. Pro. 26(b) advisory committee's note to amendments effective December 1, 2000. Stated more crudely, ***the primary purposes of the changes were to discourage lawyers from using discovery to "fish" for new claims or defenses and/or to run up unjustifiable litigation bills***.

1   *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

2   (emphasis added).

3          The Advisory Committee's Notes to Amendments Effective December 1, 2000,

4   put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

5   "signals to the parties that they have ***no entitlement to discovery to develop new***

6   ***claims*** or defenses that are not already identified in the pleadings."  Emphasis added.

7   *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

8   Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

9   that may expose the defendant to claims not previously asserted in the plaintiff's

10  complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

11  permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

12  Yet, this is precisely what Deckers is attempting to embark on here.

13         In addition, as Gina explained during the meet and confer process (*see* Chan

14  Decl. Ex. 7), documents that are not relevant to the Disputed Products, but reveal

15  Gina's awareness of the existence of UGG-branded products, or even references to the

16  term "UGG" made by Gina during its design process, would reveal nothing about

17  Gina's intent to infringe Deckers' purported rights with respect to the footwear designs

18  at issue in this case.  In response, Deckers merely proclaims that relevancy is to be

19  broadly construed, and argues that "*any* instances wherein Gina Group has copied

20  UGG® product designs in the conception/design of its own products is probative to the

21  issue of intent to knock-off Deckers' UGG® products and designs, whether it be with

22  respect to the specific disputed products at issue or not."

23         Not surprisingly, the cases Deckers cites in support of this novel proposition —

24  *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296

25  F.R.D. 632, 635 (C.D. Cal. 2013) and *Vallabharpurapu v. Burger King Corp.*, 276

26  F.R.D. 611, 615 (N.D. Cal. 2011) — have absolutely nothing to do with claims of

27  intellectual property infringement, and lend zero support to Deckers' contention that

28  Gina's consideration of any UGG-branded footwear product, or any "product feature"

1   thereof, in the development of footwear products that in no way implicate Deckers'

2   purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents, would

3   be "probative to the issue of intent to knock-off Deckers' UGG® products and

4   designs".  Surely, if this were a recognized theory upon which to take unfettered

5   discovery of an alleged infringer's business, Deckers would not be relying on cases

6   that deal with alleged violations of the Americans with Disabilities Act.

7          In any case, Deckers' argument in support of this irrelevant Request boils down

8   to its conclusory assertion that it may establish Gina's willful intent to infringe

9   Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

10  Patents in this case, by demonstrating that Gina has previously considered or reviewed

11  entirely unrelated UGG-branded products in the development of footwear products that

12  are not the subject of Deckers' infringement claims, and otherwise have not been

13  challenged by Deckers.  There is simply no precedent that would permit Deckers to

14  troll Gina's records in the hopes of finding a basis for additional claims, and then

15  shoehorning those unaccused prior wrongful acts into evidence of Gina's willful intent

16  to infringe Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button

17  Design Patents.  Any such conduct would fall far short of the type of prior wrongful

18  acts that may be admissible under Federal Rule of Evidence 404(b)(2), and,

19  accordingly, the discovery Deckers seeks, to the extent it even exists, would not be

20  admissible to establish Gina's intent (or for any other purpose) here.

21         Once again, this Request is nothing more than an attempt "to 'fish' for new

22  claims or defenses and/or to run up unjustifiable litigation bills", neither of which is

23  permitted under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100,

24  1102 (N.D. Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte*

25  *H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests

26  seeking irrelevant information are inherently undue and burdensome.").

27  / / /

28  / / /

**DECKERS' REQUEST FOR PRODUCTION NO. 16:**

DOCUMENTS RELATING to YOUR analysis, review, consideration, or copying of, or comparison against, any UGG® product or product feature in designing, developing, or implementing a feature of its footwear, including but not limited to the DISPUTED PRODUCTS.

**GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Gina Group incorporates by reference the above-stated General Objections as if fully set forth herein. Gina Group further objects to the use of the defined term "Disputed Products" on the grounds that it is vague and ambiguous to the extent it refers to products other than those depicted in Section I(A)(11) of the Requests. Gina Group further objects to this Request on the basis that the term "feature" is vague and ambiguous. Group further objects to this Request on the grounds that it is overly broad and unduly burdensome in that it is not reasonably calculated to lead to the discovery of admissible evidence and seeks information that is not relevant to the subject matter of this lawsuit. Gina Group further objects to this Request to the extent it seeks the production of documents that are privileged or exempt from discovery under the attorney-client privilege, work product doctrine, or other privilege or exemption under applicable law.

Subject to and without waiving the foregoing objections, Gina Group states that it will produce relevant, responsive, non-privileged documents, if any, to the extent such documents exist within its possession, custody, or control and are located following a reasonably diligent search, relating to Gina Group's consideration of any products featuring the purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents in developing the "Disputed Products."

**DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 16:**

Deckers reincorporates herein by reference the statements and legal arguments set forth in its contentions with respect to RFP No. 15 as though fully set forth herein.

**GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 16:**

This Request, like Request No. 15, calls for production of all documents that relate to Gina's analysis and/or consideration of any UGG-branded product or product feature in the development any footwear, regardless of whether any such UGG-branded product or product feature relates to any purported intellectual property right of Deckers, much less Deckers' purported Bailey Button Boot Trade Dress and Bailey Button Design Patents (the only designs at issue in this case). In response to this Request, Gina agreed to produce non-privileged documents, if any, that relate to Gina's analysis and/or consideration of any UGG-branded products that featured the purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents in the development of the Disputed Products. Once again, however, Deckers wants more.

The zealous overreach of this Request appears to be grounded in Deckers' fundamental misunderstanding of the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Contrary to Deckers' interpretation, this principle "is subject to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the requested discovery is not apparent, "it is the burden of the party seeking discovery to show the relevancy of the request." *Krause v. Nevada Mutual Ins. Co.*, 2014 WL 496936, *3 (D. Nev. Feb. 6, 2014). In this case, Deckers' only "claims" relate to the alleged infringement of its one button and three button Bailey Boot Design. Deckers has failed to meet this threshold burden of showing the relevance of this Request "to [its] claim[s]", as it does not even attempt to articulate the relevance of Gina's analysis and/or consideration of any UGG-branded products that have no relation to Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents. Deckers' application should be denied on this basis alone.

Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us– Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL

4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party", it disagrees with the misleading gloss Deckers attempts to place on this language, and notes Deckers' failure to acknowledge the significance of the critical clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the *claim or defense* of any party".

As the court explained in *Bernstein v. Travelers Ins. Co.*:

> It is not immaterial to the issues we address here that in the year 2000 the judiciary and Congress made changes in the language of Rule 26(b) that clearly were intended to pull back the presumptive outer relevance-boundaries of civil discovery. The change that most obviously signaled this intent consisted of substituting the words "claim or defense" for the phrase "subject matter involved in the pending action" in the general description of the presumptively permissible scope of discovery. Fed. R. Civ. P. 26(b). The Advisory Committee Notes that accompanied these amendments report that the primary target of the changes was discovery that swept "far beyond the claims and defenses of the parties," discovery that imposed unjustifiable expenses and delays and that sometimes seemed designed not to fairly litigate the issues presented by the pleadings but to "develop new claims or defenses." Fed. R. Civ. Pro. 26(b) advisory committee's note to amendments effective December 1, 2000. Stated more crudely, ***the primary purposes of the changes were to discourage lawyers from using discovery to "fish" for new claims or defenses and/or to run up unjustifiable litigation bills***.

1  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

2  (emphasis added).

3      The Advisory Committee's Notes to Amendments Effective December 1, 2000,

4  put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

5  "signals to the parties that they have ***no entitlement to discovery to develop new***

6  ***claims*** or defenses that are not already identified in the pleadings." Emphasis added.

7  *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

8  Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

9  that may expose the defendant to claims not previously asserted in the plaintiff's

10 complaint."). In other words, "[f]ishing expeditions to discover new claims … are not

11 permitted." *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

12 Yet, this is precisely what Deckers is attempting to embark on here.

13      In addition, as Gina explained during the meet and confer process (*see* Chan

14 Decl. Ex. 7), documents that are not relevant to the Disputed Products, but reveal

15 Gina's awareness of the existence of UGG-branded products, or even references to the

16 term "UGG" made by Gina during its design process, would reveal nothing about

17 Gina's intent to infringe Deckers' purported rights with respect to the footwear designs

18 at issue in this case. In response, Deckers merely proclaims that relevancy is to be

19 broadly construed, and argues that "*any* instances wherein Gina Group has copied

20 UGG® product designs in the conception/design of its own products is probative to the

21 issue of intent to knock-off Deckers' UGG® products and designs, whether it be with

22 respect to the specific disputed products at issue or not."

23      Not surprisingly, the cases Deckers cites in support of this novel proposition —

24 *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296

25 F.R.D. 632, 635 (C.D. Cal. 2013) and *Vallabharpurapu v. Burger King Corp.*, 276

26 F.R.D. 611, 615 (N.D. Cal. 2011) — have absolutely nothing to do with claims of

27 intellectual property infringement, and lend zero support to Deckers' contention that

28 Gina's consideration of any UGG-branded footwear product, or any "product feature"

1  thereof, in the development of footwear products that in no way implicate Deckers'

2  purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents, would

3  be "probative to the issue of intent to knock-off Deckers' UGG® products and

4  designs".  Surely, if this were a recognized theory upon which to take unfettered

5  discovery of an alleged infringer's business, Deckers would not be relying on cases

6  that deal with alleged violations of the Americans with Disabilities Act.

7        In any case, Deckers' argument in support of this irrelevant Request boils down

8  to its conclusory assertion that it may establish Gina's willful intent to infringe

9  Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

10 Patents in this case, by demonstrating that Gina has previously considered or reviewed

11 entirely unrelated UGG-branded products in the development of footwear products that

12 are not the subject of Deckers' infringement claims, and otherwise have not been

13 challenged by Deckers.  There is simply no precedent that would permit Deckers to

14 troll Gina's records in the hopes of finding a basis for additional claims, and then

15 shoehorning those unaccused prior wrongful acts into evidence of Gina's willful intent

16 to infringe Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button

17 Design Patents.  Any such conduct would fall far short of the type of prior wrongful

18 acts that may be admissible under Federal Rule of Evidence 404(b)(2), and,

19 accordingly, the discovery Deckers seeks, to the extent it even exists, would not be

20 admissible to establish Gina's intent (or for any other purpose) here.

21       Once again, this Request is nothing more than an attempt "to 'fish' for new

22 claims or defenses and/or to run up unjustifiable litigation bills", neither of which is

23 permitted under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100,

24 1102 (N.D. Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte*

25 *H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests

26 seeking irrelevant information are inherently undue and burdensome.").

27 **DECKERS' REQUEST FOR PRODUCTION NO. 25:**

28       All COMMUNICATIONS REGARDING UGG® products and/or its designs.

**GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Gina Group incorporates by reference the above-stated General Objections as if fully set forth herein. Gina Group further objects to this Request on the grounds that it is overly broad and unduly burdensome in that it is not reasonably calculated to lead to the discovery of admissible evidence and seeks information that is not relevant to the subject matter of this lawsuit. Gina Group further objects to this Request to the extent it seeks the production of documents that are privileged or exempt from discovery under the attorney-client privilege, work product doctrine, or other privilege or exemption under applicable law.

Subject to and without waiving the foregoing objections, Gina Group states that it will produce relevant, responsive, non-privileged documents, if any, to the extent such documents exist within its possession, custody, or control and are located following a reasonably diligent search, relating to UGG products featuring the purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents.

**DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 25:**

At the outset, Gina Group's boilerplate objections that the requests are "overly broad and unduly burdensome," are unsubstantiated.  General or boilerplate objections are improper-especially when a party fails to submit any evidentiary declarations supporting such objections. [Paulsen v. Case Corp., 168 F.R.D. 285, 289 (C.D.Cal.1996); see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir.,1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); Josephs v. Harris Corp., 677 F.2d 985,992 (3rd Cir.1982) ("mere statement by a party that the interrogatory was overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful

1    objection")]  Furthermore, "[t]he responding party must exercise reason and common

2    sense in answering discovery. If necessary, the responding party may provide

3    definitions in order to clarify their answers." [Brown v. Castillo, 2006 WL 1480444

4    (E.D.Cal., 2006); Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295, 310

5    (D. Kan., 1996)]

6         Gina Group has stated, both in its responses and during the parties L.R. 37-1

7    communications, that only Gina Group's communications regarding the UGG® brand

8    and/or UGG® products as it relates to the specific "Disputed Products" at issue in the

9    present action are relevant.  (See Chan Dec., Ex. 7 (Ederer's July 10, 2014 letter))

10        Indeed, Gina Group's interpretation of relevance is too narrow where

11   "[r]elevancy is broadly construed, and a request for discovery should be considered

12   relevant if there is *any possibility* that the information sought may be relevant to the

13   claim or defense of any party.  A request for discovery should be allowed unless it is

14   clear that the information sought can have no possible bearing on the claim or defense

15   of a party."  [In re Toys R Us–Delaware, Inc. Fair & Accurate Credit Transactions Act

16   (FACTA) Litig., 2010 WL 4942645, *1 (C.D.Cal., 2010); see also Surfvivor Media,

17   Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir., 2005) ("Litigants may obtain

18   discovery regarding any matter, not privileged, that is relevant to the claim or defense

19   of any party. Relevant information for purposes of discovery is information reasonably

20   calculated to lead to the discovery of admissible evidence.") (internal quotation marks

21   and citations omitted)]

22        Deckers has alleged infringement of both its Bailey Button Boot Trade Dress

23   and Bailey Button Design Patents in the present action.  Issues of willfulness,

24   knowledge, and intent are relevant both to determination of liability and damages,

25   where Defendant's intent in selecting the disputed mark is one of several factors

26   considered in the determination of likelihood of confusion with respect to

27   trademark/trade dress infringement claims [AMF Inc. v. Sleekcraft Boats, 599 F.2d

28   341 (9th Cir.,1979)] and willfulness may lead to enhanced damages and attorneys' fees

1  under both the Lanham Act and statute governing infringement of patents [See 15

2  U.S.C. § 1117 and 35 U.S.C. § 284, 285]  Deckers' unfair competition claims are

3  based on allegations that Defendants have intentionally knocked off the UGG® Bailey

4  Button Styles in an effort to trade off of the goodwill established in said UGG®

5  designs, which are well known and highly recognized by the public.  (See First

6  Amended Complaint, Dckt# 40)

7  Thus, *any* communications regarding the UGG® brand and/or its products is

8  probative to the issue of Defendants' awareness of the UGG® brand and its intent to

9  knock-off Deckers' UGG® products and designs, whether it be with respect to the

10  specific disputed products at issue or not.  [See e.g. Independent Living Center of

11  Southern California v. City of Los Angeles, Cal., 296 F.R.D. 632, 635 (C.D.Cal.,

12  2013) citing to Vallabharpurapu v. Burger King Corp., 276 F.R.D. 611, 615

13  (N.D.Cal.2011) ("discovery is not limited to issues raised by the pleadings, for

14  discovery itself is designed to help define and clarify the issues.")]

15  **GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 25:**

16  This Request calls for production of all communications regarding UGG-

17  branded products, regardless of whether any such communications relate to Deckers'

18  purported Bailey Button Boot Trade Dress or Bailey Button Design Patents (the only

19  designs at issue in this case), or to the development of any of the so-called Disputed

20  Products.  In response to this Request, Gina agreed to produce non-privileged

21  communications, if any, that relate to UGG-branded products featuring the purported

22  Bailey Button Boot Trade Dress and/or Bailey Button Design Patents — the only

23  designs at issue in this action.  Once again, however, Deckers wants more.

24  The zealous overreach of this Request appears to be grounded in Deckers'

25  fundamental misunderstanding of the scope of discovery permissible under Federal

26  Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery

27  regarding any nonprivileged matter that is relevant to any party's claim or defense."

28  Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject

1   to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the

2   requested discovery is not apparent, "it is the burden of the party seeking discovery to

3   show the relevancy of the request."  *Krause v. Nevada Mutual Ins. Co.*,  2014 WL

4   496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the

5   alleged infringement of its one button and three button Bailey Boot Design.  Deckers

6   has failed to meet this threshold burden of showing the relevance of this Request "to

7   [its] claim[s]", as it does not even attempt to articulate the relevance of

8   communications regarding UGG-branded products and/or designs that have no relation

9   to Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

10  Patents.  Deckers' application should be denied on this basis alone.

11      Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–*

12  *Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL

13  4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly

14  construed, and a request for discovery should be considered relevant if there is any

15  possibility that the information sought may be relevant to the claim or defense of any

16  party", it disagrees with the misleading gloss Deckers attempts to place on this

17  language, and notes Deckers' failure to acknowledge the significance of the critical

18  clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to

19  *claim or defense* of any party".

20      As the court explained in *Bernstein v. Travelers Ins. Co.*:

21          It is not immaterial to the issues we address here that in the year

22          2000 the judiciary and Congress made changes in the language

23          of Rule 26(b) that clearly were intended to pull back the

24          presumptive outer relevance-boundaries of civil discovery.  The

25          change that most obviously signaled this intent consisted of

26          substituting the words "claim or defense" for the phrase "subject

27          matter involved in the pending action" in the general description

28          of the presumptively permissible scope of discovery.  Fed. R.

1    Civ. P. 26(b).  The Advisory Committee Notes that

2    accompanied these amendments report that the primary target of

3    the changes was discovery that swept "far beyond the claims

4    and defenses of the parties," discovery that imposed

5    unjustifiable expenses and delays and that sometimes seemed

6    designed not to fairly litigate the issues presented by the

7    pleadings but to "develop new claims or defenses." Fed. R. Civ.

8    Pro. 26(b) advisory committee's note to amendments effective

9    December 1, 2000.  Stated more crudely, ***the primary purposes***

10    ***of the changes were to discourage lawyers from using***

11    ***discovery to "fish" for new claims or defenses and/or to run up***

12    ***unjustifiable litigation bills***.

13    *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

14    (emphasis added).

15     The Advisory Committee's Notes to Amendments Effective December 1, 2000,

16    put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

17    "signals to the parties that they have ***no entitlement to discovery to develop new***

18    ***claims*** or defenses that are not already identified in the pleadings."  Emphasis added.

19    *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

20    Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

21    that may expose the defendant to claims not previously asserted in the plaintiff's

22    complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

23    permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

24    Yet, this is precisely what Deckers is attempting to embark on here.

25     In addition, as Gina explained during the meet and confer process (*see* Chan

26    Decl. Ex. 7), communications that are not relevant to the Disputed Products, but reveal

27    Gina's awareness of the existence of UGG-branded products, or even references to the

28    term "UGG" made by Gina during its design process, would reveal nothing about

28

Gina's intent to infringe Deckers' purported rights with respect to the footwear designs at issue in this case.  In response, Deckers merely proclaims that relevancy is to be broadly construed, and argues that "*any* communications regarding the UGG® brand and/or its products is probative to the issue of Defendants' awareness of the UGG® brand and its intent to knock-off Deckers' UGG® products and designs, whether it be with respect to the specific disputed products at issue or not."

Not surprisingly, the cases Deckers cites in support of this novel proposition — *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296 F.R.D. 632, 635 (C.D. Cal. 2013) and *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011) — have absolutely nothing to do with claims of intellectual property infringement, and lend zero support to Deckers' contention that Gina's mere mention of the word "UGG", would be "probative to the issue of Defendants' awareness of the UGG® brand and its intent to knock-off Deckers' UGG® products and designs".  Surely, if this were a recognized theory upon which to take unfettered discovery of an alleged infringer's business, Deckers would not be relying on cases that deal with alleged violations of the Americans with Disabilities Act.

In any case, Deckers' argument in support of this irrelevant Request boils down to its conclusory assertion that it may establish Gina's willful intent to infringe Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents in this case, by demonstrating that Gina has previously considered or reviewed entirely unrelated UGG-branded products in the development of footwear products that are not the subject of Deckers' infringement claims, and otherwise have not been challenged by Deckers.  There is simply no precedent that would permit Deckers to troll Gina's records in the hopes of finding a basis for additional claims, and then shoehorning those unaccused prior wrongful acts into evidence of Gina's willful intent to infringe Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents.  Any such conduct would fall far short of the type of prior wrongful

1    acts that may be admissible under Federal Rule of Evidence 404(b)(2), and,

2    accordingly, the discovery Deckers seeks, to the extent it even exists, would not be

3    admissible to establish Gina's intent (or for any other purpose) here.

4         Once again, this Request is nothing more than an attempt "to 'fish' for new

5    claims or defenses and/or to run up unjustifiable litigation bills", neither of which is

6    permitted under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100,

7    1102 (N.D. Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte*

8    *H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests

9    seeking irrelevant information are inherently undue and burdensome.").

10   **DECKERS' REQUEST FOR PRODUCTION NO. 26:**

11        All samples of UGG® products in YOUR possession (excluding samples, if any,

12   which may have been purchased exclusively for purposes related to this litigation by or

13   at the direction of counsel) together with all DOCUMENTS RELATING to when the

14   samples were obtained, for what purpose, and how YOU used them.

15   **GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

16        Gina Group incorporates by reference the above-stated General Objections as if

17   fully set forth herein. Gina Group further objects to this Request on the grounds that it

18   is overly broad and unduly burdensome in that it is not reasonably calculated to lead to

19   the discovery of admissible evidence and seeks information that is not relevant to the

20   subject matter of this lawsuit. Gina Group further objects to this Request to the extent

21   it seeks the production of documents that are privileged or exempt from discovery

22   under the attorney-client privilege, work product doctrine, or other privilege or

23   exemption under applicable law.

24        Subject to and without waiving the foregoing objections, Gina Group states that

25   it will produce samples of UGG products, if any, to the extent such samples exist

26   within its possession, custody, or control and are located following a reasonably

27   diligent search, that feature the purported Bailey Button Boot Trade Dress and/or

28   Bailey Button Design Patents.

**DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 26:**

At the outset, Gina Group's boilerplate objections that the requests are "overly broad and unduly burdensome," are unsubstantiated.  General or boilerplate objections are improper-especially when a party fails to submit any evidentiary declarations supporting such objections. [Paulsen v. Case Corp., 168 F.R.D. 285, 289 (C.D.Cal.1996); see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir.,1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); Josephs v. Harris Corp., 677 F.2d 985,992 (3rd Cir.1982) ("mere statement by a party that the interrogatory was overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a successful objection")]  Furthermore, "[t]he responding party must exercise reason and common sense in answering discovery. If necessary, the responding party may provide definitions in order to clarify their answers." [Brown v. Castillo, 2006 WL 1480444 (E.D.Cal., 2006); Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295, 310 (D. Kan., 1996)]

Gina Group has stated, both in its responses and during the parties L.R. 37-1 communications, that only Gina Group's possession of UGG® products bearing the Bailey Button Boot Trade Dress/Bailey Button Design Patents is relevant.  (See Chan Dec., Ex. 7 (Ederer's July 10, 2014 letter))

Indeed, Gina Group's interpretation of relevance is too narrow where "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party.  A request for discovery should be allowed unless it is clear that the information sought can have no possible bearing on the claim or defense

of a party."  [In re Toys R Us–Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig., 2010 WL 4942645, *1 (C.D.Cal., 2010); see also Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir., 2005) ("Litigants may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Relevant information for purposes of discovery is information reasonably calculated to lead to the discovery of admissible evidence.") (internal quotation marks and citations omitted)]

Deckers has alleged infringement of both its Bailey Button Boot Trade Dress and Bailey Button Design Patents in the present action.  Issues of willfulness, knowledge, and intent are relevant both to determination of liability and damages, where Defendant's intent in selecting the disputed mark is one of several factors considered in the determination of likelihood of confusion with respect to trademark/trade dress infringement claims [AMF Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir.,1979)] and willfulness may lead to enhanced damages and attorneys' fees under both the Lanham Act and statute governing infringement of patents [See 15 U.S.C. § 1117 and 35 U.S.C. § 284, 285]  Furthermore, Deckers' unfair competition claims are based on allegations that Defendants have intentionally knocked off the UGG® Bailey Button Styles in an effort to trade off of the goodwill established in said UGG® designs, which are well known and highly recognized by the public.  (See First Amended Complaint, Dckt# 40)

Thus, *any* and all UGG® products that Gina Group has considered in the conception/design of its own products is probative to the issue of intent to knock-off Deckers' UGG® products and designs, whether it be with respect to the specific disputed products at issue or not.  [See e.g. Independent Living Center of Southern California v. City of Los Angeles, Cal., 296 F.R.D. 632, 635 (C.D.Cal., 2013) citing to Vallabharpurapu v. Burger King Corp., 276 F.R.D. 611, 615 (N.D.Cal.2011) ("discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.")]

**GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 26:**

This Request calls for production of (a) all samples of UGG-branded products in Gina's possession, and (b) all documents relating to when the samples were obtained, for what purpose, and how Gina used them, regardless of whether any such samples feature or embody Deckers' purported Bailey Button Boot Trade Dress or Bailey Button Design Patents (the only designs at issue in this case), or were used in the development of any of the so-called Disputed Products.  In response to this Request, Gina agreed to produce samples of UGG-branded products, if any, that feature the purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents — the only designs at issue in this action.  Once again, however, Deckers wants more.

The zealous overreach of this Request appears to be grounded in Deckers' fundamental misunderstanding of the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the requested discovery is not apparent, "it is the burden of the party seeking discovery to show the relevancy of the request."  *Krause v. Nevada Mutual Ins. Co.*,  2014 WL 496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the alleged infringement of its one button and three button Bailey Boot Design.  Deckers has failed to meet this threshold burden of showing the relevance of this Request "to [its] claim[s]", as it does not even attempt to articulate the relevance of Gina's possession of UGG-branded boots that have no relation to Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents and/or were not considered by Gina in the development of the so-called "Disputed Products".  Deckers' application should be denied on this basis alone.

Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL

4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party", it disagrees with the misleading gloss Deckers attempts to place on this language, and notes Deckers' failure to acknowledge the significance of the critical clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the ***claim or defense*** of any party".

As the court explained in *Bernstein v. Travelers Ins. Co.*:

> It is not immaterial to the issues we address here that in the year 2000 the judiciary and Congress made changes in the language of Rule 26(b) that clearly were intended to pull back the presumptive outer relevance-boundaries of civil discovery. The change that most obviously signaled this intent consisted of substituting the words "claim or defense" for the phrase "subject matter involved in the pending action" in the general description of the presumptively permissible scope of discovery. Fed. R. Civ. P. 26(b). The Advisory Committee Notes that accompanied these amendments report that the primary target of the changes was discovery that swept "far beyond the claims and defenses of the parties," discovery that imposed unjustifiable expenses and delays and that sometimes seemed designed not to fairly litigate the issues presented by the pleadings but to "develop new claims or defenses." Fed. R. Civ. Pro. 26(b) advisory committee's note to amendments effective December 1, 2000. Stated more crudely, ***the primary purposes of the changes were to discourage lawyers from using discovery to "fish" for new claims or defenses and/or to run up unjustifiable litigation bills***.

1  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

2  (emphasis added).

3      The Advisory Committee's Notes to Amendments Effective December 1, 2000,

4  put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

5  "signals to the parties that they have ***no entitlement to discovery to develop new***

6  ***claims*** or defenses that are not already identified in the pleadings."  Emphasis added.

7  *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

8  Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

9  that may expose the defendant to claims not previously asserted in the plaintiff's

10  complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

11  permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

12  Yet, this is precisely what Deckers is attempting to embark on here.

13      Notably, Deckers' own argument in support of this Request significantly scales

14  back the breadth of this Request.  Indeed, Deckers conflates Gina's possession of any

15  UGG-branded products with Gina's "consider[ation of any such products] in the

16  conception/design of its own products", while the Request is not so limited.  In any

17  event, in response, Deckers merely proclaims that relevancy is to be broadly construed,

18  and argues that "*any* and all UGG® products that Gina Group has considered in the

19  conception/design of its own products is probative to the issue of the intent to knock-

20  off Deckers' UGG® products and designs, whether it be with respect to the specific

21  disputed products at issue or not."

22      Not surprisingly, the cases Deckers cites in support of this novel proposition —

23  *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296

24  F.R.D. 632, 635 (C.D. Cal. 2013) and *Vallabharpurapu v. Burger King Corp.*, 276

25  F.R.D. 611, 615 (N.D. Cal. 2011) — have absolutely nothing to do with claims of

26  intellectual property infringement, and lend zero support to Deckers' contention that

27  Gina's mere possession of samples of UGG-branded products, would be "probative to

28  the issue of the intent to knock-off Deckers' UGG® products and designs".  Surely, if

35

1  this were a recognized theory upon which to take unfettered discovery of an alleged

2  infringer's business, Deckers would not be relying on cases that deal with alleged

3  violations of the Americans with Disabilities Act.

4         In any case, Deckers' argument in support of this irrelevant Request boils down

5  to its conclusory assertion that it may establish Gina's willful intent to infringe

6  Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

7  Patents in this case, by demonstrating that Gina has previously considered or reviewed

8  entirely unrelated UGG-branded products in the development of footwear products that

9  are not the subject of Deckers' infringement claims, and otherwise have not been

10  challenged by Deckers.  There is simply no precedent that would permit Deckers to

11  troll Gina's records in the hopes of finding a basis for additional claims, and then

12  shoehorning those unaccused prior wrongful acts into evidence of Gina's willful intent

13  to infringe Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button

14  Design Patents.  Any such conduct would fall far short of the type of prior wrongful

15  acts that may be admissible under Federal Rule of Evidence 404(b)(2), and,

16  accordingly, the discovery Deckers seeks, to the extent it even exists, would not be

17  admissible to establish Gina's intent (or for any other purpose) here.

18         Once again, this Request is nothing more than an attempt "to 'fish' for new

19  claims or defenses and/or to run up unjustifiable litigation bills", neither of which is

20  permitted under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100,

21  1102 (N.D. Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte*

22  *H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests

23  seeking irrelevant information are inherently undue and burdensome.").

24  **DECKERS' REQUEST FOR PRODUCTION NO. 27:**

25         DOCUMENTS RELATING to YOUR inspection of UGG® products.

26  Documents responsive to this Request include, but are not limited to, photographs

27  of UGG® products and tear-downs of UGG® products, notes and memoranda that

28

1  You made relating to UGG® products, and email communications relating to any

2  such inspection.

3  **GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

4       Gina Group incorporates by reference the above-stated General Objections as if

5  fully set forth herein. Gina Group further objects to this Request on the basis that the

6  term "tear-downs" is vague and ambiguous. Gina Group further objects to this Request

7  on the grounds that it is overly broad and unduly burdensome in that it is not

8  reasonably calculated to lead to the discovery of admissible evidence and seeks

9  information that is not relevant to the subject matter of this lawsuit. Gina Group further

10 objects to this Request to the extent it seeks the production of documents that are

11 privileged or exempt from discovery under the attorney-client privilege, work product

12 doctrine, or other privilege or exemption under applicable law.

13      Subject to and without waiving the foregoing objections, Gina Group states that

14 it will produce relevant, responsive, non-privileged documents, if any, to the extent

15 such documents exist within its possession, custody, or control and are located

16 following a reasonably diligent search, relating to UGG products featuring the

17 purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents.

18 **DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 27:**

19      Deckers reincorporates herein by reference the statements and legal arguments

20 set forth in its contentions with respect to RFP Nos. 15 and 26 as though fully set

21 forth herein.

22 **GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 27:**

23      This Request calls for production of documents relating to Gina's inspection of

24 UGG-branded products (including, without limitation, all "photographs", "tear-

25 downs", "notes and memoranda" and "email communications"), regardless of whether

26 any such "inspected" products feature Deckers' purported Bailey Button Boot Trade

27 Dress or Bailey Button Design Patents (the only designs at issue in this case), or were

28 used in the development of any of the so-called Disputed Products.  In response to this

1   Request, Gina agreed to produce non-privileged documents, if any, relating to Gina's

2   inspection of UGG-branded products that feature the purported Bailey Button Boot

3   Trade Dress and/or Bailey Button Design Patents — the only designs at issue in this

4   action.  Once again, however, Deckers wants more.

5       The zealous overreach of this Request appears to be grounded in Deckers'

6   fundamental misunderstanding of the scope of discovery permissible under Federal

7   Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery

8   regarding any nonprivileged matter that is relevant to any party's claim or defense."

9   Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject

10   to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the

11   requested discovery is not apparent, "it is the burden of the party seeking discovery to

12   show the relevancy of the request."  *Krause v. Nevada Mutual Ins. Co.*,  2014 WL

13   496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the

14   alleged infringement of its one button and three button Bailey Boot Design.  Deckers

15   has failed to meet this threshold burden of showing the relevance of this Request "to

16   [its] claim[s]", as it does not even attempt to articulate the relevance of Gina's

17   inspection of UGG-branded products that have no relation to Deckers' purported

18   Bailey Button Boot Trade Dress and/or Bailey Button Design Patents and/or were not

19   considered by Gina in the development of the so-called "Disputed Products".  Deckers'

20   application should be denied on this basis alone.

21       Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–*

22   *Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL

23   4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly

24   construed, and a request for discovery should be considered relevant if there is any

25   possibility that the information sought may be relevant to the claim or defense of any

26   party", it disagrees with the misleading gloss Deckers attempts to place on this

27   language, and notes Deckers' failure to acknowledge the significance of the critical

28

1   clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the

2   ***claim or defense*** of any party".

3       As the court explained in *Bernstein v. Travelers Ins. Co.*:

4         It is not immaterial to the issues we address here that in the year

5         2000 the judiciary and Congress made changes in the language

6         of Rule 26(b) that clearly were intended to pull back the

7         presumptive outer relevance-boundaries of civil discovery.  The

8         change that most obviously signaled this intent consisted of

9         substituting the words "claim or defense" for the phrase "subject

10        matter involved in the pending action" in the general description

11        of the presumptively permissible scope of discovery.  Fed. R.

12        Civ. P. 26(b).  The Advisory Committee Notes that

13        accompanied these amendments report that the primary target of

14        the changes was discovery that swept "far beyond the claims

15        and defenses of the parties," discovery that imposed

16        unjustifiable expenses and delays and that sometimes seemed

17        designed not to fairly litigate the issues presented by the

18        pleadings but to "develop new claims or defenses." Fed. R. Civ.

19        Pro. 26(b) advisory committee's note to amendments effective

20        December 1, 2000.  Stated more crudely, ***the primary purposes***

21        ***of the changes were to discourage lawyers from using***

22        ***discovery to "fish" for new claims or defenses and/or to run up***

23        ***unjustifiable litigation bills***.

24  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

25  (emphasis added).

26      The Advisory Committee's Notes to Amendments Effective December 1, 2000,

27  put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

28  "signals to the parties that they have ***no entitlement to discovery to develop new***

1   *claims* or defenses that are not already identified in the pleadings."  Emphasis added.

2   *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

3   Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

4   that may expose the defendant to claims not previously asserted in the plaintiff's

5   complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

6   permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

7   Yet, this is precisely what Deckers is attempting to embark on here.

8           In addition, as Gina explained during the meet and confer process (*see* Chan

9   Decl. Ex. 7), documents that are not relevant to the Disputed Products, but reveal

10   Gina's awareness of the existence of UGG-branded products, or even references to the

11   term "UGG" made by Gina during its design process, would reveal nothing about

12   Gina's intent to infringe Deckers' purported rights with respect to the footwear designs

13   at issue.  In response, Deckers merely proclaims that relevancy is to be broadly

14   construed, and argues that *any* documents relating to Gina's inspection of any UGG-

15   branded products "is probative to the issue of Gina's awareness of the UGG® brand

16   and its intent to knock-off Deckers' UGG® products and designs, whether it be with

17   respect to the specific disputed products at issue or not."

18           Not surprisingly, the cases Deckers cites in support of this novel proposition —

19   *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296

20   F.R.D. 632, 635 (C.D. Cal. 2013) and *Vallabharpurapu v. Burger King Corp.*, 276

21   F.R.D. 611, 615 (N.D. Cal. 2011) — have absolutely nothing to do with claims of

22   intellectual property infringement, and lend zero support to Deckers' contention that

23   documents relating to Gina's inspection of UGG-branded products that do not feature

24   the purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents at

25   issue, would be "probative to the issue of Defendants' awareness of the UGG® brand

26   and its intent to knock-off Deckers' UGG® products and designs".  Surely, if this were

27   a recognized theory upon which to take unfettered discovery of an alleged infringer's

28

1   business, Deckers would not be relying on cases that deal with alleged violations of the

2   Americans with Disabilities Act.

3          In any case, Deckers' argument in support of this irrelevant Request boils down

4   to its conclusory assertion that it may establish Gina's willful intent to infringe

5   Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

6   Patents in this case, by demonstrating that Gina has previously considered or reviewed

7   entirely unrelated UGG-branded products in the development of footwear products that

8   are not the subject of Deckers' infringement claims, and otherwise have not been

9   challenged by Deckers.  There is simply no precedent that would permit Deckers to

10  troll Gina's records in the hopes of finding a basis for additional claims, and then

11  shoehorning those unaccused prior wrongful acts into evidence of Gina's willful intent

12  to infringe Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button

13  Design Patents.  Any such conduct would fall far short of the type of prior wrongful

14  acts that may be admissible under Federal Rule of Evidence 404(b)(2), and,

15  accordingly, the discovery Deckers seeks, to the extent it even exists, would not be

16  admissible to establish Gina's intent (or for any other purpose) here.

17         Once again, this Request is nothing more than an attempt "to 'fish' for new

18  claims or defenses and/or to run up unjustifiable litigation bills", neither of which is

19  permitted under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100,

20  1102 (N.D. Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte*

21  *H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests

22  seeking irrelevant information are inherently undue and burdensome.").

23  **DECKERS' REQUEST FOR PRODUCTION NO. 28:**

24         DOCUMENTS RELATING to YOUR analysis, review, consideration or

25  assessment of any UGG® products or product feature in designing, developing, or

26  implementing any feature of the DISPUTED PRODUCTS.

27  / / /

28  / / /

**GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Gina Group incorporates by reference the above-stated General Objections as if fully set forth herein. Gina Group further objects to the use of the defined term "Disputed Products" on the grounds that it is vague and ambiguous to the extent it refers to products other than those depicted in Section I(A)(11) of the Requests. Gina Group further objects to this Request on the grounds that it is overly broad and unduly burdensome in that it is not reasonably calculated to lead to the discovery of admissible evidence and seeks information that is not relevant to the subject matter of this lawsuit. Gina Group further objects to this Request to the extent it seeks the production of documents that are privileged or exempt from discovery under the attorney-client privilege, work product doctrine, or other privilege or exemption under applicable law.

Subject to and without waiving the foregoing objections, Gina Group states that it will produce relevant, responsive, non-privileged documents, if any, to the extent such documents exist within its possession, custody, or control and are located following a reasonably diligent search, relating to UGG products featuring the purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents.

**DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 28:**

Deckers reincorporates herein by reference the statements and legal arguments set forth in its contentions with respect to RFP Nos. 15 and 26 as though fully set forth herein.

**GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 28:**

This Request calls for production of documents relating to Gina's analysis, review, consideration or assessment of any UGG-branded products or product feature in the design or development of any feature of the so-called Disputed Products.  In response to this Request, Gina agreed to produce non-privileged documents, if any, relating to UGG-branded products that feature the purported Bailey Button Boot Trade

1   Dress and/or Bailey Button Design Patents — the only designs at issue in this action.

2   Once again, however, Deckers wants more.

3   　　The zealous overreach of this Request appears to be grounded in Deckers'

4   fundamental misunderstanding of the scope of discovery permissible under Federal

5   Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery

6   regarding any nonprivileged matter that is relevant to any party's claim or defense."

7   Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject

8   to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the

9   requested discovery is not apparent, "it is the burden of the party seeking discovery to

10  show the relevancy of the request."  *Krause v. Nevada Mutual Ins. Co.*,  2014 WL

11  496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the

12  alleged infringement of its one button and three button Bailey Boot Design.  Deckers

13  has failed to meet this threshold burden of showing the relevance of this Request "to

14  [its] claim[s]", as it does not even attempt to articulate the relevance of Gina's

15  analysis, review, consideration or assessment of UGG-branded products that have no

16  relation to Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button

17  Design Patents.  Deckers' application should be denied on this basis alone.

18  　　Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–*

19  *Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL

20  4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly

21  construed, and a request for discovery should be considered relevant if there is any

22  possibility that the information sought may be relevant to the claim or defense of any

23  party", it disagrees with the misleading gloss Deckers attempts to place on this

24  language, and notes Deckers' failure to acknowledge the significance of the critical

25  clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the

26  *claim or defense* of any party".

27  　　As the court explained in *Bernstein v. Travelers Ins. Co.*:

28

1        It is not immaterial to the issues we address here that in the year

2        2000 the judiciary and Congress made changes in the language

3        of Rule 26(b) that clearly were intended to pull back the

4        presumptive outer relevance-boundaries of civil discovery.  The

5        change that most obviously signaled this intent consisted of

6        substituting the words "claim or defense" for the phrase "subject

7        matter involved in the pending action" in the general description

8        of the presumptively permissible scope of discovery.  Fed. R.

9        Civ. P. 26(b).  The Advisory Committee Notes that

10       accompanied these amendments report that the primary target of

11       the changes was discovery that swept "far beyond the claims

12       and defenses of the parties," discovery that imposed

13       unjustifiable expenses and delays and that sometimes seemed

14       designed not to fairly litigate the issues presented by the

15       pleadings but to "develop new claims or defenses." Fed. R. Civ.

16       Pro. 26(b) advisory committee's note to amendments effective

17       December 1, 2000.  Stated more crudely, ***the primary purposes***

18       ***of the changes were to discourage lawyers from using***

19       ***discovery to "fish" for new claims or defenses and/or to run up***

20       ***unjustifiable litigation bills***.

21 *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

22 (emphasis added).

23     The Advisory Committee's Notes to Amendments Effective December 1, 2000,

24 put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

25 "signals to the parties that they have ***no entitlement to discovery to develop new***

26 ***claims*** or defenses that are not already identified in the pleadings."  Emphasis added.

27 *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

28 Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

1   that may expose the defendant to claims not previously asserted in the plaintiff's

2   complaint."). In other words, "[f]ishing expeditions to discover new claims … are not

3   permitted." *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

4   Yet, this is precisely what Deckers is attempting to embark on here.

5        In addition, as Gina explained during the meet and confer process (*see* Chan

6   Decl. Ex. 7), documents that are not relevant to the Disputed Products, but reveal

7   Gina's awareness of the existence of UGG-branded products, or even references to the

8   term "UGG" made by Gina during its design process, would reveal nothing about

9   Gina's intent to infringe Deckers' purported rights with respect to the footwear designs

10  at issue in this case. In response, Deckers merely proclaims that relevancy is to be

11  broadly construed, and argues that *any* documents relating to Gina's inspection of any

12  UGG-branded products "is probative to the issue of Gina's awareness of the UGG®

13  brand and its intent to knock-off Deckers' UGG® products and designs, whether it be

14  with respect to the specific disputed products at issue or not."

15       Not surprisingly, the cases Deckers cites in support of this novel proposition —

16  *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296

17  F.R.D. 632, 635 (C.D. Cal. 2013) and *Vallabharpurapu v. Burger King Corp.*, 276

18  F.R.D. 611, 615 (N.D. Cal. 2011) — have absolutely nothing to do with claims of

19  intellectual property infringement, and lend zero support to Deckers' contention that

20  Gina's analysis, review, consideration or assessment of UGG-branded products that

21  have no relation to Deckers' purported Bailey Button Boot Trade Dress and/or Bailey

22  Button Design Patents, would be "probative to the issue of Defendants' awareness of

23  the UGG® brand and its intent to knock-off Deckers' UGG® products and designs".

24  Surely, if this were a recognized theory upon which to take unfettered discovery of an

25  alleged infringer's business, Deckers would not be relying on cases that deal with

26  alleged violations of the Americans with Disabilities Act.

27       In any case, Deckers' argument in support of this irrelevant Request boils down

28  to its conclusory assertion that it may establish Gina's willful intent to infringe

**JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL**
**FURTHER INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS**

1  Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

2  Patents in this case, by demonstrating that Gina has previously considered or reviewed

3  entirely unrelated UGG-branded products in the development of footwear products that

4  are not the subject of Deckers' infringement claims, and otherwise have not been

5  challenged by Deckers.  There is simply no precedent that would permit Deckers to

6  troll Gina's records in the hopes of finding a basis for additional claims, and then

7  shoehorning those unaccused prior wrongful acts into evidence of Gina's willful intent

8  to infringe Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button

9  Design Patents.  Any such conduct would fall far short of the type of prior wrongful

10  acts that may be admissible under Federal Rule of Evidence 404(b)(2), and,

11  accordingly, the discovery Deckers seeks, to the extent it even exists, would not be

12  admissible to establish Gina's intent (or for any other purpose) here.

13       Once again, this Request is nothing more than an attempt "to 'fish' for new

14  claims or defenses and/or to run up unjustifiable litigation bills", neither of which is

15  permitted under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100,

16  1102 (N.D. Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte*

17  *H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests

18  seeking irrelevant information are inherently undue and burdensome.").

19  **DECKERS' REQUEST FOR PRODUCTION NO. 29:**

20       All COMMUNICATIONS that contain the word "UGG" or "UGGS," including

21  all electronic communications, internal notes or memoranda referencing the word

22  anywhere in the communication, including the subject heading and/or body of the

23  COMMUNICATION.

24  **GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

25       Gina Group incorporates by reference the above-stated General Objections as if

26  fully set forth herein. Gina Group further objects to this Request on the grounds that it

27  is overly broad and unduly burdensome in that it is not reasonably calculated to lead to

28  the discovery of admissible evidence and seeks information that is not relevant to the

1  subject matter of this lawsuit. Gina Group further objects to this Request to the extent

2  it seeks the production of documents that are privileged or exempt from discovery

3  under the attorney-client privilege, work product doctrine, joint defense privilege, or

4  other privilege or exemption under applicable law.

5      Subject to and without waiving the foregoing objections, Gina Group states that

6  it will produce relevant, responsive, non-privileged documents, if any, to the extent

7  such documents exist within its possession, custody, or control and are located

8  following a reasonably diligent search, and relate to the so-called "Disputed Products."

9  **DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 29:**

10      Deckers reincorporates herein by reference the statements and legal arguments

11  set forth in its contentions with respect to RFP Nos. 15 and 25 as though fully set forth

12  herein.

13  **GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 29:**

14      This Request calls for production of all communications that contain the word

15  "UGG" or "UGGS", regardless of whether any such communications relate to

16  Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

17  Patents (the only designs at issue in this case), or to the development of any of the so-

18  called Disputed Products.  In response to this Request, Gina agreed to produce non-

19  privileged communications, if any, that contain the word "UGG" or "UGGS" and

20  relate to UGG-branded products featuring the purported Bailey Button Boot Trade

21  Dress and/or Bailey Button Design Patents — the only designs at issue in this action.

22  Once again, however, Deckers wants more.

23      The zealous overreach of this Request appears to be grounded in Deckers'

24  fundamental misunderstanding of the scope of discovery permissible under Federal

25  Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery

26  regarding any nonprivileged matter that is relevant to any party's claim or defense."

27  Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject

28  to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the

1   requested discovery is not apparent, "it is the burden of the party seeking discovery to

2   show the relevancy of the request." *Krause v. Nevada Mutual Ins. Co.*,  2014 WL

3   496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the

4   alleged infringement of its one button and three button Bailey Boot Design.  Deckers

5   has failed to meet this threshold burden of showing the relevance of this Request "to

6   [its] claim[s]", as it does not even attempt to articulate the relevance of

7   communications that contain the word "UGG" or "UGGS" but have no relation to

8   Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

9   Patents.  Deckers' application should be denied on this basis alone.

10        Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–*

11  *Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL

12  4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly

13  construed, and a request for discovery should be considered relevant if there is any

14  possibility that the information sought may be relevant to the claim or defense of any

15  party", it disagrees with the misleading gloss Deckers attempts to place on this

16  language, and notes Deckers' failure to acknowledge the significance of the critical

17  clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the

18  ***claim or defense*** of any party".

19        As the court explained in *Bernstein v. Travelers Ins. Co.*:

20             It is not immaterial to the issues we address here that in the year

21             2000 the judiciary and Congress made changes in the language

22             of Rule 26(b) that clearly were intended to pull back the

23             presumptive outer relevance-boundaries of civil discovery.  The

24             change that most obviously signaled this intent consisted of

25             substituting the words "claim or defense" for the phrase "subject

26             matter involved in the pending action" in the general description

27             of the presumptively permissible scope of discovery.  Fed. R.

28             Civ. P. 26(b).  The Advisory Committee Notes that

1      accompanied these amendments report that the primary target of

2      the changes was discovery that swept "far beyond the claims

3      and defenses of the parties," discovery that imposed

4      unjustifiable expenses and delays and that sometimes seemed

5      designed not to fairly litigate the issues presented by the

6      pleadings but to "develop new claims or defenses." Fed. R. Civ.

7      Pro. 26(b) advisory committee's note to amendments effective

8      December 1, 2000.  Stated more crudely, ***the primary purposes***

9      ***of the changes were to discourage lawyers from using***

10     ***discovery to "fish" for new claims or defenses and/or to run up***

11     ***unjustifiable litigation bills***.

12  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

13  (emphasis added).

14    The Advisory Committee's Notes to Amendments Effective December 1, 2000,

15  put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

16  "signals to the parties that they have ***no entitlement to discovery to develop new***

17  ***claims*** or defenses that are not already identified in the pleadings."  Emphasis added.

18  *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

19  Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

20  that may expose the defendant to claims not previously asserted in the plaintiff's

21  complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

22  permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

23  Yet, this is precisely what Deckers is attempting to embark on here.

24    In addition, as Gina explained during the meet and confer process (*see* Chan

25  Decl. Ex. 7), documents that are not relevant to the Disputed Products, but reveal

26  Gina's awareness of the existence of UGG products, or even references to the term

27  "UGG" made by Gina during its design process, would reveal nothing about Gina's

28  intent to infringe Deckers' purported rights with respect to the footwear designs at

1    issue in this case.  In response, Deckers merely proclaims that relevancy is to be

2    broadly construed, and argues that "*any* communications regarding the UGG® brand

3    and/or its products is probative to the issue of Defendants' awareness of the UGG®

4    brand and its intent to knock-off Deckers' UGG® products and designs, whether it be

5    with respect to the specific disputed products at issue or not."

6           Not surprisingly, the cases Deckers cites in support of this novel proposition —

7    *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296

8    F.R.D. 632, 635 (C.D. Cal. 2013) and *Vallabharpurapu v. Burger King Corp.*, 276

9    F.R.D. 611, 615 (N.D. Cal. 2011) — have absolutely nothing to do with claims of

10   intellectual property infringement, and lend zero support to Deckers' contention that

11   Gina's mere mention of the word "UGG" or "UGGS" would be "probative to the issue

12   of Defendants' awareness of the UGG® brand and its intent to knock-off Deckers'

13   UGG® products and designs".  Surely, if this were a recognized theory upon which to

14   take unfettered discovery of an alleged infringer's business, Deckers would not be

15   relying on cases that deal with alleged violations of the Americans with Disabilities

16   Act.

17          In any case, Deckers' argument in support of this irrelevant Request boils down

18   to its conclusory assertion that it may establish Gina's willful intent to infringe

19   Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

20   Patents in this case, by demonstrating that Gina has previously considered or reviewed

21   entirely unrelated UGG-branded products in the development of footwear products that

22   are not the subject of Deckers' infringement claims, and otherwise have not been

23   challenged by Deckers.  There is simply no precedent that would permit Deckers to

24   troll Gina's records in the hopes of finding a basis for additional claims, and then

25   shoehorning those unaccused prior wrongful acts into evidence of Gina's willful intent

26   to infringe Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button

27   Design Patents.  Any such conduct would fall far short of the type of prior wrongful

28   acts that may be admissible under Federal Rule of Evidence 404(b)(2), and,

1  accordingly, the discovery Deckers seeks, to the extent it even exists, would not be

2  admissible to establish Gina's intent (or for any other purpose) here.

3        Furthermore, Deckers' arguments in support of this Request appear to hinge on

4  the false premise that Deckers has asserted a trademark infringement claim against

5  Gina with respect to its purported use of the UGG word mark. To be clear, Deckers

6  has asserted no such claim against Gina. In any event, even if it had, this Request

7  would still be overly broad and irrelevant because it calls for production of all

8  communications that contain the *word* "UGG" or "UGGS", and is not limited to any

9  use of the *trademark* UGG to refer to Deckers. The word "ugg" is a generic descriptor

10 for a sheepskin-style boot design that Deckers owns no rights to. *See* Ederer Decl. ¶¶

11 2-3, Exs. B-C. Accordingly, Gina's use, if any, of the word "ugg" in its descriptive

12 sense would have no relevance to the design infringement claims at issue in this case.

13       Once again, this Request is nothing more than an attempt "to 'fish' for new

14 claims or defenses and/or to run up unjustifiable litigation bills", neither of which is

15 permitted under Rule 26(b). *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100,

16 1102 (N.D. Cal. 2006). Deckers is not entitled to this irrelevant discovery. *See Monte*

17 *H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests

18 seeking irrelevant information are inherently undue and burdensome.").

19 **DECKERS' REQUEST FOR PRODUCTION NO. 30:**

20      All DOCUMENTS which REFER or RELATE to the word "UGG" or "UGGS,"

21 with the exception of post-litigation communications between YOU and YOUR

22 counsel of record in this action that are protected by the attorney-client privilege.

23 **GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

24      Gina Group incorporates by reference the above-stated General Objections as if

25 fully set forth herein. Gina Group further objects to this Request on the basis that it is

26 duplicative of Request No. 29. Gina Group further objects to this Request on the

27 grounds that it is overly broad and unduly burdensome in that it is not reasonably

28 calculated to lead to the discovery of admissible evidence and seeks information that is

not relevant to the subject matter of this lawsuit. Gina Group further objects to this Request to the extent it seeks the production of documents that are privileged or exempt from discovery under the attorney-client privilege, work product doctrine, joint defense privilege, or other privilege or exemption under applicable law.

Subject to and without waiving the foregoing objections, Gina Group states that it will produce relevant, responsive, non-privileged documents, if any, to the extent such documents exist within its possession, custody, or control and are located following a reasonably diligent search, and relate to the so-called "Disputed Products."

**DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 30:**

Deckers reincorporates herein by reference the statements and legal arguments set forth in its contentions with respect to RFP Nos. 15 and 25 as though fully set forth herein.

**GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 30:**

This Request calls for production of all documents that refer to or relate the word "UGG" or "UGGS", regardless of whether any such communications relate to Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents (the only designs at issue in this case), or to the development of any of the so-called Disputed Products.  In response to this Request, Gina agreed to produce non-privileged communications, if any, that refer or relate to the word "UGG" or "UGGS" and relate to the so-called Disputed Products.  Once again, however, Deckers wants more.

The zealous overreach of this Request appears to be grounded in Deckers' fundamental misunderstanding of the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the requested discovery is not apparent, "it is the burden of the party seeking discovery to

show the relevancy of the request." *Krause v. Nevada Mutual Ins. Co.*, 2014 WL 496936, *3 (D. Nev. Feb. 6, 2014). In this case, Deckers' only "claims" relate to the alleged infringement of its one button and three button Bailey Boot Design. Deckers has failed to meet this threshold burden of showing the relevance of this Request "to [its] claim[s]", as it does not even attempt to articulate the relevance of documents that refer or relate to the word "UGG" or "UGGS" but have no relation to Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents. Deckers' application should be denied on this basis alone.

Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL 4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party", it disagrees with the misleading gloss Deckers attempts to place on this language, and notes Deckers' failure to acknowledge the significance of the critical clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the ***claim or defense*** of any party".

As the court explained in *Bernstein v. Travelers Ins. Co.*:

> It is not immaterial to the issues we address here that in the year 2000 the judiciary and Congress made changes in the language of Rule 26(b) that clearly were intended to pull back the presumptive outer relevance-boundaries of civil discovery. The change that most obviously signaled this intent consisted of substituting the words "claim or defense" for the phrase "subject matter involved in the pending action" in the general description of the presumptively permissible scope of discovery. Fed. R. Civ. P. 26(b). The Advisory Committee Notes that accompanied these amendments report that the primary target of

1      the changes was discovery that swept "far beyond the claims

2      and defenses of the parties," discovery that imposed

3      unjustifiable expenses and delays and that sometimes seemed

4      designed not to fairly litigate the issues presented by the

5      pleadings but to "develop new claims or defenses." Fed. R. Civ.

6      Pro. 26(b) advisory committee's note to amendments effective

7      December 1, 2000.  Stated more crudely, ***the primary purposes***

8      ***of the changes were to discourage lawyers from using***

9      ***discovery to "fish" for new claims or defenses and/or to run up***

10     ***unjustifiable litigation bills***.

11 *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

12 (emphasis added).

13       The Advisory Committee's Notes to Amendments Effective December 1, 2000,

14 put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

15 "signals to the parties that they have ***no entitlement to discovery to develop new***

16 ***claims*** or defenses that are not already identified in the pleadings."  Emphasis added.

17 *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

18 Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

19 that may expose the defendant to claims not previously asserted in the plaintiff's

20 complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

21 permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

22 Yet, this is precisely what Deckers is attempting to embark on here.

23       In addition, as Gina explained during the meet and confer process (*see* Chan

24 Decl. Ex. 7), documents that are not relevant to the Disputed Products, but reveal

25 Gina's awareness of the existence of UGG products, or even references to the term

26 "UGG" made by Gina during its design process, would reveal nothing about Gina's

27 intent to infringe Deckers' purported rights with respect to the footwear designs at

28 issue in this case.  In response, Deckers merely proclaims that relevancy is to be

1   broadly construed, and argues that "*any* communications regarding the UGG® brand

2   and/or its products is probative to the issue of Defendants' awareness of the UGG®

3   brand and its intent to knock-off Deckers' UGG® products and designs, whether it be

4   with respect to the specific disputed products at issue or not."

5        Not surprisingly, the cases Deckers cites in support of this novel proposition —

6   *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296

7   F.R.D. 632, 635 (C.D. Cal. 2013) and *Vallabharpurapu v. Burger King Corp.*, 276

8   F.R.D. 611, 615 (N.D. Cal. 2011) — have absolutely nothing to do with claims of

9   intellectual property infringement, and lend zero support to Deckers' contention that

10  Gina's mere mention of the word "UGG" or "UGGS" would be "probative to the issue

11  of Defendants' awareness of the UGG® brand and its intent to knock-off Deckers'

12  UGG® products and designs".  Surely, if this were a recognized theory upon which to

13  take unfettered discovery of an alleged infringer's business, Deckers would not be

14  relying on cases that deal with alleged violations of the Americans with Disabilities

15  Act.

16       In any case, Deckers' argument in support of this irrelevant Request boils down

17  to its conclusory assertion that it may establish Gina's willful intent to infringe

18  Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

19  Patents in this case, by demonstrating that Gina has previously considered or reviewed

20  entirely unrelated UGG-branded products in the development of footwear products that

21  are not the subject of Deckers' infringement claims, and otherwise have not been

22  challenged by Deckers.  There is simply no precedent that would permit Deckers to

23  troll Gina's records in the hopes of finding a basis for additional claims, and then

24  shoehorning those unaccused prior wrongful acts into evidence of Gina's willful intent

25  to infringe Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button

26  Design Patents.  Any such conduct would fall far short of the type of prior wrongful

27  acts that may be admissible under Federal Rule of Evidence 404(b)(2), and,

28  accordingly, the discovery Deckers seeks, to the extent it even exists, would not be

1   admissible to establish Gina's intent (or for any other purpose) here.

2   　　Furthermore, Deckers' arguments in support of this Request appear to hinge on

3   the false premise that Deckers has asserted a trademark infringement claim against

4   Gina with respect to its purported use of the UGG word mark.  To be clear, Deckers

5   has asserted no such claim against Gina.  In any event, even if it had, this Request

6   would still be overly broad and irrelevant because it calls for production of all

7   documents which refer or relate to the *word* "UGG" or "UGGS", and is not limited to

8   any use of the *trademark* UGG to refer to Deckers.  The word "ugg" is a generic

9   descriptor for a sheepskin-style boot design that Deckers owns no rights to.  *See* Ederer

10  Decl. ¶¶ 2-3, Exs. B-C.  Accordingly, Gina's use, if any, of the word "ugg" in its

11  descriptive sense would have no relevance to the design infringement claims at issue in

12  this case.

13  　　Once again, this Request is nothing more than an attempt "to 'fish' for new

14  claims or defenses and/or to run up unjustifiable litigation bills", neither of which is

15  permitted under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100,

16  1102 (N.D. Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte*

17  *H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests

18  seeking irrelevant information are inherently undue and burdensome.").

19  **DECKERS' REQUEST FOR PRODUCTION NO. 31:**

20  　　All DOCUMENTS that contain the word "UGG" or "UGGS," including all

21  electronic communications, internal notes or memoranda in which the word appears

22  in either the body or the subject/heading of said DOCUMENTS.

23  **GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

24  　　Gina Group incorporates by reference the above-stated General Objections

25  as if fully set forth herein. Gina Group further objects to this Request on the basis

26  that it is duplicative of Request Nos. 29 and 30. Gina Group further objects to this

27  Request on the grounds that it is overly broad and unduly burdensome in that it is

28  not reasonably calculated to lead to the discovery of admissible evidence and

1  seeks information that is not relevant to the subject matter of this lawsuit. Gina

2  Group further objects to this Request to the extent it seeks the production of

3  documents that are privileged or exempt from discovery under the attorney-client

4  privilege, work product doctrine, joint defense privilege, or other privilege or

5  exemption under applicable law.

6       Subject to and without waiving the foregoing objections, Gina Group states

7  that it will produce relevant, responsive, non-privileged documents, if any, to the

8  extent such documents exist within its possession, custody, or control and are located

9  following a reasonably diligent search, and relate to the so-called "Disputed

10  Products."

11  **DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 31:**

12       Deckers reincorporates herein by reference the statements and legal arguments

13  set forth in its contentions with respect to RFP Nos. 15 and 25 as though fully set forth

14  herein.

15  **GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 31:**

16       This Request calls for production of all documents that contain the word "UGG"

17  or "UGGS", regardless of whether any such communications relate to Deckers'

18  purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents (the

19  only designs at issue in this case), or to the development of any of the so-called

20  Disputed Products.  In response to this Request, Gina agreed to produce non-privileged

21  documents, if any, that contain the word "UGG" or "UGGS" and that relate to the so-

22  called Disputed Products.  Once again, however, Deckers wants more.

23       The zealous overreach of this Request appears to be grounded in Deckers'

24  fundamental misunderstanding of the scope of discovery permissible under Federal

25  Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery

26  regarding any nonprivileged matter that is relevant to any party's claim or defense."

27  Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject

28  to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the

1    requested discovery is not apparent, "it is the burden of the party seeking discovery to
2    show the relevancy of the request." *Krause v. Nevada Mutual Ins. Co.*,  2014 WL
3    496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the
4    alleged infringement of its one button and three button Bailey Boot Design.  Deckers
5    has failed to meet this threshold burden of showing the relevance of this Request "to
6    [its] claim[s]", as it does not even attempt to articulate the relevance of documents that
7    contain the word "UGG" or "UGGS" but have no relation to Deckers' purported
8    Bailey Button Boot Trade Dress and/or Bailey Button Design Patents.  Deckers'
9    application should be denied on this basis alone.

10       Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–*
11   *Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL
12   4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly
13   construed, and a request for discovery should be considered relevant if there is any
14   possibility that the information sought may be relevant to the claim or defense of any
15   party", it disagrees with the misleading gloss Deckers attempts to place on this
16   language, and notes Deckers' failure to acknowledge the significance of the critical
17   clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the
18   ***claim or defense*** of any party".

19       As the court explained in *Bernstein v. Travelers Ins. Co.*:

20           It is not immaterial to the issues we address here that in the year
21           2000 the judiciary and Congress made changes in the language
22           of Rule 26(b) that clearly were intended to pull back the
23           presumptive outer relevance-boundaries of civil discovery.  The
24           change that most obviously signaled this intent consisted of
25           substituting the words "claim or defense" for the phrase "subject
26           matter involved in the pending action" in the general description
27           of the presumptively permissible scope of discovery.  Fed. R.
28           Civ. P. 26(b).  The Advisory Committee Notes that

1    accompanied these amendments report that the primary target of

2    the changes was discovery that swept "far beyond the claims

3    and defenses of the parties," discovery that imposed

4    unjustifiable expenses and delays and that sometimes seemed

5    designed not to fairly litigate the issues presented by the

6    pleadings but to "develop new claims or defenses." Fed. R. Civ.

7    Pro. 26(b) advisory committee's note to amendments effective

8    December 1, 2000.  Stated more crudely, ***the primary purposes***

9    ***of the changes were to discourage lawyers from using***

10   ***discovery to "fish" for new claims or defenses and/or to run up***

11   ***unjustifiable litigation bills***.

12   *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

13   (emphasis added).

14        The Advisory Committee's Notes to Amendments Effective December 1, 2000,

15   put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

16   "signals to the parties that they have ***no entitlement to discovery to develop new***

17   ***claims*** or defenses that are not already identified in the pleadings."  Emphasis added.

18   *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

19   Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

20   that may expose the defendant to claims not previously asserted in the plaintiff's

21   complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

22   permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

23   Yet, this is precisely what Deckers is attempting to embark on here.

24        In addition, as Gina explained during the meet and confer process (*see* Chan

25   Decl. Ex. 7), documents that are not relevant to the Disputed Products, but reveal

26   Gina's awareness of the existence of UGG products, or even references to the term

27   "UGG" made by Gina during its design process, would reveal nothing about Gina's

28   intent to infringe Deckers' purported rights with respect to the footwear designs at

1   issue in this case.  In response, Deckers merely proclaims that relevancy is to be

2   broadly construed, and argues that "*any* communications regarding the UGG® brand

3   and/or its products is probative to the issue of Defendants' awareness of the UGG®

4   brand and its intent to knock-off Deckers' UGG® products and designs, whether it be

5   with respect to the specific disputed products at issue or not."

6       Not surprisingly, the cases Deckers cites in support of this novel proposition —

7   *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296

8   F.R.D. 632, 635 (C.D. Cal. 2013) and *Vallabharpurapu v. Burger King Corp.*, 276

9   F.R.D. 611, 615 (N.D. Cal. 2011) — have absolutely nothing to do with claims of

10  intellectual property infringement, and lend zero support to Deckers' contention that

11  Gina's mere mention of the word "UGG" would be "probative to the issue of

12  Defendants' awareness of the UGG® brand and its intent to knock-off Deckers'

13  UGG® products and designs".  Surely, if this were a recognized theory upon which to

14  take unfettered discovery of an alleged infringer's business, Deckers would not be

15  relying on cases that deal with alleged violations of the Americans with Disabilities

16  Act.

17      In any case, Deckers' argument in support of this irrelevant Request boils down

18  to its conclusory assertion that it may establish Gina's willful intent to infringe

19  Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

20  Patents in this case, by demonstrating that Gina has previously considered or reviewed

21  entirely unrelated UGG-branded products in the development of footwear products that

22  are not the subject of Deckers' infringement claims, and otherwise have not been

23  challenged by Deckers.  There is simply no precedent that would permit Deckers to

24  troll Gina's records in the hopes of finding a basis for additional claims, and then

25  shoehorning those unaccused prior wrongful acts into evidence of Gina's willful intent

26  to infringe Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button

27  Design Patents.  Any such conduct would fall far short of the type of prior wrongful

28  acts that may be admissible under Federal Rule of Evidence 404(b)(2), and,

1   accordingly, the discovery Deckers seeks, to the extent it even exists, would not be

2   admissible to establish Gina's intent (or for any other purpose) here.

3        Furthermore, Deckers' arguments in support of this Request appear to hinge on

4   the false premise that Deckers has asserted a trademark infringement claim against

5   Gina with respect to its purported use of the UGG word mark.  To be clear, Deckers

6   has asserted no such claim against Gina.  In any event, even if it had, this Request

7   would still be overly broad and irrelevant because it calls for production of all

8   documents which contain the *word* "UGG" or "UGGS", and is not limited to any use

9   of the *trademark* UGG to refer to Deckers.  The word "ugg" is a generic descriptor for

10   a sheepskin-style boot design that Deckers owns no rights to.  *See* Ederer Decl. ¶¶ 2-3,

11   Exs. B-C.  Accordingly, Gina's use, if any, of the word "ugg" in its descriptive sense

12   would have no relevance to the design infringement claims at issue in this case.

13        Once again, this Request is nothing more than an attempt "to 'fish' for new

14   claims or defenses and/or to run up unjustifiable litigation bills", neither of which is

15   permitted under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100,

16   1102 (N.D. Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte*

17   *H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests

18   seeking irrelevant information are inherently undue and burdensome.").

19   **DECKERS' REQUEST FOR PRODUCTION NO. 37:**

20        DOCUMENTS RELATING to actual or possible confusion, mistake or

21   deception, or the likelihood of confusion, as to source, affiliation, or sponsorship

22   between DECKERS and GINA or between any of the UGG® products and

23   GINA's products.

24   **GINA GROUP'S RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

25        Gina Group incorporates by reference the above-stated General Objections

26   as if fully set forth herein. Gina Group further objects to this Request on the basis

27   that the phrase "possible confusion, mistake or deception" is vague and

28   ambiguous. Gina Group further objects to this Request on the grounds that it is

1  overly broad and unduly burdensome in that it is not reasonably calculated to lead

2  to the discovery of admissible evidence and seeks information that is not relevant

3  to the subject matter of this lawsuit. Gina Group further objects to this Request to

4  the extent it seeks the production of documents that are privileged or exempt from

5  discovery under the attorney-client privilege, work product doctrine, joint defense

6  privilege, or other privilege or exemption under applicable law.

7       Subject to and without waiving the foregoing objections, Gina Group states

8  that it will produce relevant, responsive, non-privileged documents, if any, to the

9  extent such documents exist within its possession, custody, or control and are

10  located following a reasonably diligent search, and relate to any actual confusion

11  or likelihood of confusion between the so-called "Disputed Products" and UGG

12  products featuring the purported Bailey Button Boot Trade Dress and/or Bailey

13  Button Design Patents.

14  **DECKERS' CONTENTIONS RE REQUEST FOR PRODUCTION NO. 37:**

15       At the outset, Gina Group's boilerplate objections that the requests are "overly

16  broad and unduly burdensome," are unsubstantiated.  General or boilerplate objections

17  are improper-especially when a party fails to submit any evidentiary declarations

18  supporting such objections. [Paulsen v. Case Corp., 168 F.R.D. 285, 289

19  (C.D.Cal.1996); see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894

20  F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were overly broad,

21  burdensome, oppressive, and irrelevant were insufficient to meet objecting party's

22  burden of explaining why discovery requests were objectionable); Panola Land Buyers

23  Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir.,1985) (conclusory recitations of

24  expense and burdensomeness are not sufficiently specific to demonstrate why

25  requested discovery is objectionable); Josephs v. Harris Corp., 677 F.2d 985,992 (3rd

26  Cir.1982) ("mere statement by a party that the interrogatory was overly broad,

27  burdensome, oppressive and irrelevant" is not adequate to voice a successful

28  objection")]  Furthermore, "[t]he responding party must exercise reason and common

1  sense in answering discovery. If necessary, the responding party may provide

2  definitions in order to clarify their answers." [Brown v. Castillo, 2006 WL 1480444

3  (E.D.Cal., 2006); Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295, 310

4  (D. Kan., 1996)]

5        Gina Group has stated, both in its responses and during the parties L.R. 37-1

6  communications, that only instances wherein a person has expressed confusion

7  regarding the parties' respective products bearing the trade dress/design patents at

8  issue would be relevant, and that expressions of confusion that do not relate to the

9  specific "Disputed Products" are not relevant.  (See Chan Dec., Ex. 7 (Ederer's July

10  10, 2014 letter))

11        Gina Group is clearly confused regarding the meaning of "likelihood of

12  confusion" under the Lanham Act.  Defendants are liable for trade dress

13  infringement where its use of the design "is likely to cause confusion, or to cause

14  mistake, or to deceive as to the affiliation, connection or association of such person

15  with another person, or as to the origin, sponsorship, or approval of his or her goods,

16  services, or commercial activities by another person." [15 U.S.C. § 1125(a)(1)(A)]

17  For example, if there is a communication wherein an individual expresses confusion

18  regarding whether or not Gina Group is a distributor of UGG® products or if Gina

19  Group is somehow affiliated with Deckers and/or the UGG® brand, then this would

20  be evidence of actual confusion, whether or not the "Disputed Products" or the

21  Bailey Button Styles are referenced in the communication itself.  Indeed, said

22  communication may have resulted from exposure to the Disputed Products at issue,

23  but is simply not specifically referenced in the communication, which is relevant.

24        If this Court were to accept Gina Group's position, such a highly probative

25  communication evidencing confusion between the two parties would not be

26  discoverable.  Gina Group's position is not only contrary to what is contemplated by

27  the Lanham Act in defining likelihood of confusion, it is also contrary to the

28  principles of Fed.R.Civ.P. 26, where "[r]elevancy is broadly construed, and a request

1   for discovery should be considered relevant if there is ***any possibility*** that the

2   information sought may be relevant to the claim or defense of any party.  A request

3   for discovery should be allowed unless it is clear that the information sought can

4   have no possible bearing on the claim or defense of a party."  [In re Toys R Us–

5   Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig., 2010 WL

6   4942645, *1 (C.D.Cal., 2010); see also Surfvivor Media, Inc. v. Survivor Prods., 406

7   F.3d 625, 635 (9th Cir., 2005) ("Litigants may obtain discovery regarding any

8   matter, not privileged, that is relevant to the claim or defense of any party. Relevant

9   information for purposes of discovery is information reasonably calculated to lead to

10  the discovery of admissible evidence.") (internal quotation marks and citations

11  omitted)]

12  **GINA GROUP'S CONTENTIONS RE REQUEST FOR PRODUCTION NO. 37:**

13        This Request calls for production of documents that relate to "actual or possible

14  confusion, mistake or deception, or the likelihood of confusion, as to source,

15  affiliation, or sponsorship between DECKERS and GINA or between any of the

16  UGG® products and GINA's products", regardless of whether any such confusion

17  arose as between any of the so-called "Disputed Products", and any UGG-branded

18  products featuring the purported Bailey Button Boot Trade Dress and/or Bailey Button

19  Design Patents (the only designs at issue in this case).  In response to this Request,

20  Gina agreed to produce non-privileged documents, if any, that relate to any actual

21  confusion or likelihood of confusion between the so-called Disputed Products and

22  UGG-branded products featuring the purported Bailey Button Boot Trade Dress and/or

23  Bailey Button Design Patents.  Once again, however, Deckers wants more.

24        Deckers' arguments in support of this Request seem to imply that it has asserted

25  a claim against Gina in this case based on an alleged false affiliation between Deckers

26  and Gina arising from conduct separate and apart from Gina's alleged infringement of

27  Deckers' purported Bailey Button Boot Trade Dress and Bailey Button Design

28  Patents.  This, however, simply is not the case, as Deckers has asserted no such broad-

based claim against Gina.  Rather, Deckers' claims are limited to Gina's alleged infringement of Deckers' purported Bailey Button Boot Trade Dress and Bailey Button Design Patents, and any likelihood of confusion or false affiliation as between Deckers and Gina caused by reasons other than Gina's sale of the so-called Disputed Products is not relevant to this case.

The zealous overreach of this Request appears to be grounded in Deckers' fundamental misunderstanding of the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the requested discovery is not apparent, "it is the burden of the party seeking discovery to show the relevancy of the request."  *Krause v. Nevada Mutual Ins. Co.*,  2014 WL 496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the alleged infringement of its one button and three button Bailey Boot Design.  Deckers has failed to meet this threshold burden of showing the relevance of this Request "to [its] claim[s]", as it offers nothing more than the conclusory and unsupported assertion that any consumer confusion as to a possible affiliation or between Gina and Deckers, regardless of whether the confusion arose from the consumer's exposure to the so-called "Disputed Products", "would be evidence of actual confusion" in support of Deckers' Bailey Button Boot Trade Dress claim.  Again, not surprisingly, Deckers proffers no citations in support of its expansive interpretation of the Lanham Act, and instead merely proclaims that "Gina Group is clearly confused regarding the meaning of 'likelihood of confusion' under the Lanham Act."  It is Deckers, however, who has ignored the fundamental principle that "[t]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally."  *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3dd 1190, 1214 (9th Cir. 2012).

1   Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–*
2   *Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL
3   4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly
4   construed, and a request for discovery should be considered relevant if there is any
5   possibility that the information sought may be relevant to the claim or defense of any
6   party", it disagrees with the misleading gloss Deckers attempts to place on this
7   language, and notes Deckers' failure to acknowledge the significance of the critical
8   clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the
9   **claim or defense** of any party".

10   As the court explained in *Bernstein v. Travelers Ins. Co.*:

11        It is not immaterial to the issues we address here that in the year
12        2000 the judiciary and Congress made changes in the language
13        of Rule 26(b) that clearly were intended to pull back the
14        presumptive outer relevance-boundaries of civil discovery.  The
15        change that most obviously signaled this intent consisted of
16        substituting the words "claim or defense" for the phrase "subject
17        matter involved in the pending action" in the general description
18        of the presumptively permissible scope of discovery.  Fed. R.
19        Civ. P. 26(b).  The Advisory Committee Notes that
20        accompanied these amendments report that the primary target of
21        the changes was discovery that swept "far beyond the claims
22        and defenses of the parties," discovery that imposed
23        unjustifiable expenses and delays and that sometimes seemed
24        designed not to fairly litigate the issues presented by the
25        pleadings but to "develop new claims or defenses." Fed. R. Civ.
26        Pro. 26(b) advisory committee's note to amendments effective
27        December 1, 2000.  Stated more crudely, ***the primary purposes***
28        ***of the changes were to discourage lawyers from using***

1          *discovery to "fish" for new claims or defenses and/or to run up*

2              *unjustifiable litigation bills*.

3    *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

4    (emphasis added).

5          The Advisory Committee's Notes to Amendments Effective December 1, 2000,

6    put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

7    "signals to the parties that they have ***no entitlement to discovery to develop new***

8    ***claims*** or defenses that are not already identified in the pleadings."  Emphasis added.

9    *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

10   Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

11   that may expose the defendant to claims not previously asserted in the plaintiff's

12   complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

13   permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

14   Yet, this is precisely what Deckers is attempting to embark on here.

15         In addition, as Gina explained during the meet and confer process (*see* Chan

16   Decl. Ex. 7), in order for Deckers to succeed on its trade dress claim, it will need to

17   prove that Gina's use of the design in question is *likely* to cause consumers to be

18   confused as to the source of the so-called Disputed Products.  Documents relating to

19   the *possibility* that some individual may at some point be confused as to an association

20   between Deckers and Gina, especially if unrelated to Gina's *use of the designs in*

21   *question*, will do nothing to help prove such a claim, and therefore are not relevant to

22   this dispute.  Likewise, Deckers has rebuffed Gina's request for clarification as to what

23   exactly "possible confusion" means in this context, and how possible confusion is

24   relevant to establishing a likelihood of confusion under the Lanham Act.

25         Once again, this Request is nothing more than an attempt "to 'fish' for new

26   claims or defenses and/or to run up unjustifiable litigation bills", neither of which is

27   permitted under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100,

28   1102 (N.D. Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte*

*H. Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests seeking irrelevant information are inherently undue and burdensome.").

## IV.   DECKERS' MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES NOS. 14, 15, and 17

## DECKERS' SPECIAL INTERROGATORY NO. 14:

IDENTIFY all UGG® products analyzed, reviewed, considered, compared, and/or copied by GINA with respect to the design, development, and/or selection of its products.

## GINA GROUP'S RESPONSE TO SPECIAL INTERROGATORY NO. 14:

Gina Group incorporates by reference the above state General Objections as if fully set forth herein. Gina Group further objects to this Interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence and seeks information that is not relevant to the subject matter of this lawsuit. Gina Group further object to this interrogatory on the basis that it contains multiple discrete sub-parts that render Deckers' total interrogatories in excess of the twenty-five (25) interrogatory limit set forth in Federal Rule of Civil Procedure 33(a)(1). Gina Group further objects to this Interrogatory on the basis that it is vague, including as to time.

## DECKERS' CONTENTIONS RE SPECIAL INTERROGATORY NO. 14:

At the outset, Gina Group's boilerplate objections are unsubstantiated.  General or boilerplate objections are improper-especially when a party fails to submit any evidentiary declarations supporting such objections. [Paulsen v. Case Corp., 168 F.R.D. 285, 289 (C.D.Cal.1996); see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were overly broad, burdensome, oppressive, and irrelevant were insufficient to meet objecting party's burden of explaining why discovery requests were objectionable); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir.,1985) (conclusory recitations of expense and burdensomeness are not sufficiently specific to demonstrate why requested discovery is objectionable); Josephs v. Harris Corp., 677

1  F.2d 985,992 (3rd Cir.1982) ("mere statement by a party that the interrogatory was

2  overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a

3  successful objection")]  Furthermore, "[t]he responding party must exercise reason and

4  common sense in answering discovery. If necessary, the responding party may provide

5  definitions in order to clarify their answers." [Brown v. Castillo, 2006 WL 1480444

6  (E.D.Cal., 2006); Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295, 310

7  (D. Kan., 1996)]

8      Gina Group has stated, both in its responses and during the parties L.R. 37-1

9  communications, that only Gina Group's analysis/consideration of UGG® products in

10  the design of the specific "Disputed Products" at issue in the present action are

11  relevant, and that its consideration of UGG® products in the design of products that

12  have not been identified as "Disputed Products" is not relevant.  (See Chan Dec., Ex. 7

13  (Ederer's July 10, 2014 letter))

14      Indeed, Gina Group's interpretation of relevance is too narrow where

15  "[r]elevancy is broadly construed, and a request for discovery should be considered

16  relevant if there is *any possibility* that the information sought may be relevant to the

17  claim or defense of any party.  A request for discovery should be allowed unless it is

18  clear that the information sought can have no possible bearing on the claim or defense

19  of a party." [In re Toys R Us–Delaware, Inc. Fair & Accurate Credit Transactions Act

20  (FACTA) Litig., 2010 WL 4942645, *1 (C.D.Cal., 2010); see also Surfvivor Media,

21  Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir., 2005) ("Litigants may obtain

22  discovery regarding any matter, not privileged, that is relevant to the claim or defense

23  of any party. Relevant information for purposes of discovery is information reasonably

24  calculated to lead to the discovery of admissible evidence.") (internal quotation marks

25  and citations omitted)]

26      Deckers has alleged infringement of both its Bailey Button Boot Trade Dress

27  and Bailey Button Design Patents in the present action.  Issues of willfulness,

28  knowledge, and intent are relevant both to determination of liability and damages,

1   where Defendant's intent in selecting the disputed mark is one of several factors

2   considered in the determination of likelihood of confusion with respect to

3   trademark/trade dress infringement claims [<u>AMF Inc. v. Sleekcraft Boats</u>, 599 F.2d

4   341 (9th Cir.,1979)] and willfulness may lead to enhanced damages and attorneys' fees

5   under both the Lanham Act and statute governing infringement of patents [See 15

6   U.S.C. § 1117 and 35 U.S.C. § 284, 285]  Deckers' unfair competition claims are

7   based on allegations that Defendants have intentionally knocked off the UGG® Bailey

8   Button Styles in an effort to trade off of the goodwill established in said UGG®

9   designs, which are well known and highly recognized by the public.  (See First

10   Amended Complaint, Dckt# 40)

11        Thus, *any* instances wherein Gina Group has copied UGG® product designs in

12   the conception/design of its own products is probative to the issue of intent to knock-

13   off Deckers' UGG® products and designs, whether it be with respect to the specific

14   disputed products at issue or not.  [See e.g. <u>Independent Living Center of Southern</u>

15   <u>California v. City of Los Angeles, Cal.</u>, 296 F.R.D. 632, 635 (C.D.Cal., 2013) citing to

16   <u>Vallabharpurapu v. Burger King Corp.</u>, 276 F.R.D. 611, 615 (N.D.Cal.2011)

17   ("discovery is not limited to issues raised by the pleadings, for discovery itself is

18   designed to help define and clarify the issues."); <u>Kimberly-Clark Worldwide, Inc. v.</u>

19   <u>First Quality Baby Products, LLC</u>, 2011 WL 4738110 (M.D. Pa. Oct. 6, 2011)

20   (granting motion to compel for an interrogatory regarding material on non-disputed

21   products because the request was within the scope of relevant discovery)]

22        Thus, Gina Group should be compelled to provide a full and complete response

23   to this Interrogatory.

24   <u>**GINA GROUP'S CONTENTIONS RE SPECIAL INTERROGATORY NO. 14:**</u>

25        This Interrogatory calls for the identification of all UGG-branded products that

26   Gina has analyzed, reviewed, considered, compared, and/or copied in the design,

27   development or selection of any of its products, not merely the so-called Disputed

28   Products.  Gina objected to this Interrogatory on the grounds that it is not reasonably

calculated to lead to the discovery of admissible evidence and seeks information not relevant to the subject matter of this lawsuit — *i.e.*, Gina's alleged infringement of Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents.  During the meet and confer process, Gina proposed to identify all UGG-branded products, if any, that were considered in the design, development or selection of the so-called Disputed Products, since this is the only information which might conceivably be relevant to establishing Gina's intent with respect to Deckers' claims regarding the so-called Disputed Products.  Deckers rejected this proposal.

The zealous overreach of this Interrogatory appears to be grounded in Deckers' fundamental misunderstanding of the scope of discovery permissible under Federal Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the requested discovery is not apparent, "it is the burden of the party seeking discovery to show the relevancy of the request." *Krause v. Nevada Mutual Ins. Co.*, 2014 WL 496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the alleged infringement of its one button and three button Bailey Boot Design.  Deckers has failed to meet this threshold burden of showing the relevance of this Interrogatory "to [its] claim[s]", as it does not even attempt to articulate the relevance of Gina's reference to UGG-branded products that have no relation to Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents.  Deckers' application should be denied on this basis alone.

Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL 4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any

1  party", it disagrees with the misleading gloss Deckers attempts to place on this

2  language, and notes Deckers' failure to acknowledge the significance of the critical

3  clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the

4  ***claim or defense*** of any party".

5         As the court explained in *Bernstein v. Travelers Ins. Co.*:

6                It is not immaterial to the issues we address here that in the year

7                2000 the judiciary and Congress made changes in the language

8                of Rule 26(b) that clearly were intended to pull back the

9                presumptive outer relevance-boundaries of civil discovery.  The

10               change that most obviously signaled this intent consisted of

11               substituting the words "claim or defense" for the phrase "subject

12               matter involved in the pending action" in the general description

13               of the presumptively permissible scope of discovery.  Fed. R.

14               Civ. P. 26(b).  The Advisory Committee Notes that

15               accompanied these amendments report that the primary target of

16               the changes was discovery that swept "far beyond the claims

17               and defenses of the parties," discovery that imposed

18               unjustifiable expenses and delays and that sometimes seemed

19               designed not to fairly litigate the issues presented by the

20               pleadings but to "develop new claims or defenses." Fed. R. Civ.

21               Pro. 26(b) advisory committee's note to amendments effective

22               December 1, 2000.  Stated more crudely, ***the primary purposes***

23               ***of the changes were to discourage lawyers from using***

24               ***discovery to "fish" for new claims or defenses and/or to run up***

25               ***unjustifiable litigation bills***.

26  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

27  (emphasis added).

28

1    The Advisory Committee's Notes to Amendments Effective December 1, 2000,

2    put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

3    "signals to the parties that they have *no entitlement to discovery to develop new*

4    *claims* or defenses that are not already identified in the pleadings."  Emphasis added.

5    *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

6    Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

7    that may expose the defendant to claims not previously asserted in the plaintiff's

8    complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

9    permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

10   Yet, this is precisely what Deckers is attempting to embark on here.

11   In addition, as Gina explained during the meet and confer process (*see* Chan

12   Decl. Ex. 7), this Interrogatory seeks information that has no bearing on Deckers'

13   claims with respect to the so-called Disputed Products. In response, Deckers merely

14   proclaims that relevancy is to be broadly construed, and argues that "*any* instances

15   wherein Gina Group has copied UGG® products designs in the conception/design of

16   its own products is probative to the issue of the intent to knock-off Deckers' UGG®

17   products and designs, whether it be with respect to the specific disputed products at

18   issue or not."

19   Not surprisingly, the cases Deckers cites in support of this novel proposition —

20   *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296

21   F.R.D. 632, 635 (C.D. Cal. 2013), *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D.

22   611, 615 (N.D. Cal. 2011) and *Kimberly-Clark Worldwide, Inc. v. First Quality Baby*

23   *Products, LLC*, 2011 WL 4738110 (M.D. Pa. Oct. 6, 2011) — lend zero support to

24   Deckers' contention that Gina's consideration of UGG-branded products, other than

25   those that feature Deckers' purported Bailey Button Boot Trade Dress and/or Bailey

26   Button Design Patents, in connection with the development of products other than the

27   so-called Disputed Products, would be "probative to the issue of intent to knock-off

28   Deckers' UGG® products and designs".

1    In any case, Deckers' argument in support of this Interrogatory boils down to its

2    conclusory assertion that it may establish Gina's willful intent to infringe Deckers'

3    purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents in this

4    case, by demonstrating that Gina has previously considered or reviewed entirely

5    unrelated UGG-branded products in the development of footwear products that are not

6    the subject of Deckers' infringement claims, and otherwise have not been challenged

7    by Deckers.  There is simply no precedent that would permit Deckers to troll Gina's

8    records in the hopes of finding a basis for additional claims, and then shoehorning

9    those unaccused prior wrongful acts into evidence of Gina's willful intent to infringe

10   Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

11   Patents.  Any such conduct would fall far short of the type of prior wrongful acts that

12   may be admissible under Federal Rule of Evidence 404(b)(2), and, accordingly, the

13   discovery Deckers seeks, to the extent it even exists, would not be admissible to

14   establish Gina's intent (or for any other purpose) here.

15   This Interrogatory is nothing more than an attempt "to 'fish' for new claims or

16   defenses and/or to run up unjustifiable litigation bills", neither of which is permitted

17   under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D.

18   Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte H.*

19   *Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests seeking

20   irrelevant information are inherently undue and burdensome.").

21   **DECKERS' SPECIAL INTERROGATORY NO. 15:**

22   IDENTIFY each instance in which the word "UGG" was used to describe and/or

23   identify any product distributed, offered for sale, and/or sold by GINA.

24   **GINA GROUP'S RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

25   Gina Group incorporates by reference the above-stated General Objections as in

26   if forth herein. Gina Group further objects to this Interrogatory on the grounds that it is

27   not reasonably calculated to lead to the discovery of admissible evidence and seeks

28

1   information not relevant to the subject matter of this lawsuit. Gina Group further

2   objects to this interrogatory on the basis that it is vague, including as to time.

3   **DECKERS' CONTENTIONS RE SPECIAL INTERROGATORY NO. 15:**

4          At the outset, Gina Group's boilerplate objections are unsubstantiated.  General

5   or boilerplate objections are improper-especially when a party fails to submit any

6   evidentiary declarations supporting such objections. [Paulsen v. Case Corp., 168

7   F.R.D. 285, 289 (C.D.Cal.1996); see also McLeod, Alexander, Powel & Apffel, P.C. v.

8   Quarles, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were

9   overly broad, burdensome, oppressive, and irrelevant were insufficient to meet

10  objecting party's burden of explaining why discovery requests were objectionable);

11  Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir.,1985)

12  (conclusory recitations of expense and burdensomeness are not sufficiently specific to

13  demonstrate why requested discovery is objectionable); Josephs v. Harris Corp., 677

14  F.2d 985,992 (3rd Cir.1982) ("mere statement by a party that the interrogatory was

15  overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a

16  successful objection")]  Furthermore, "[t]he responding party must exercise reason and

17  common sense in answering discovery. If necessary, the responding party may provide

18  definitions in order to clarify their answers." [Brown v. Castillo, 2006 WL 1480444

19  (E.D.Cal., 2006); Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295, 310

20  (D. Kan., 1996)]

21         Gina Group has stated, both in its responses and during the parties L.R. 37-1

22  communications, that only Gina Group's use of the "UGG" mark to describe the

23  "Disputed Products" is relevant.  (See Chan Dec., Ex. 7 (Ederer's July 10, 2014 letter))

24         Indeed, Gina Group's interpretation of relevance is too narrow where

25  "[r]elevancy is broadly construed, and a request for discovery should be considered

26  relevant if there is ***any possibility*** that the information sought may be relevant to the

27  claim or defense of any party.  A request for discovery should be allowed unless it is

28  clear that the information sought can have no possible bearing on the claim or defense

1  of a party." [In re Toys R Us–Delaware, Inc. Fair & Accurate Credit Transactions Act

2  (FACTA) Litig., 2010 WL 4942645, *1 (C.D.Cal., 2010); see also Surfvivor Media,

3  Inc. v. Survivor Prods., 406 F.3d 625, 635 (9th Cir., 2005) ("Litigants may obtain

4  discovery regarding any matter, not privileged, that is relevant to the claim or defense

5  of any party. Relevant information for purposes of discovery is information reasonably

6  calculated to lead to the discovery of admissible evidence.") (internal quotation marks

7  and citations omitted)]

8      Deckers has alleged infringement of both its Bailey Button Boot Trade Dress

9  and Bailey Button Design Patents in the present action.  Issues of willfulness,

10  knowledge, and intent are relevant both to determination of liability and damages,

11  where Defendant's intent in selecting the disputed mark is one of several factors

12  considered in the determination of likelihood of confusion with respect to

13  trademark/trade dress infringement claims [AMF Inc. v. Sleekcraft Boats, 599 F.2d

14  341 (9th Cir.,1979)] and willfulness may lead to enhanced damages and attorneys' fees

15  under both the Lanham Act and statute governing infringement of patents [See 15

16  U.S.C. § 1117 and 35 U.S.C. § 284, 285]  Furthermore, Deckers' unfair competition

17  claims are based on allegations that Defendants have intentionally knocked off the

18  UGG® Bailey Button Styles in an effort to trade off of the goodwill established in said

19  UGG® designs, which are well known and highly recognized by the public.  (See First

20  Amended Complaint, Dckt# 40)

21      Thus, *any* instances wherein Gina Group has used the "UGG" mark to describe

22  or identify its products, whether it be with respect to the specific disputed products at

23  issue or not, is relevant.  [See e.g. Independent Living Center of Southern California v.

24  City of Los Angeles, Cal., 296 F.R.D. 632, 635 (C.D.Cal., 2013) citing to

25  Vallabharpurapu v. Burger King Corp., 276 F.R.D. 611, 615 (N.D.Cal.2011)

26  ("discovery is not limited to issues raised by the pleadings, for discovery itself is

27  designed to help define and clarify the issues."); Kimberly-Clark Worldwide, Inc. v.

28  First Quality Baby Products, LLC, 2011 WL 4738110 (M.D. Pa. Oct. 6, 2011)

JOINT STIPULATION RE PLAINTIFF'S MOTION TO COMPEL
FURTHER INTERROGATORY RESPONSES AND PRODUCTION OF DOCUMENTS

1  (granting motion to compel for an interrogatory regarding material on non-disputed

2  products because the request was within the scope of relevant discovery)]

3       Thus, Gina Group should be compelled to provide a full and complete response

4  to this Interrogatory.

5  **GINA GROUP'S CONTENTIONS RE SPECIAL INTERROGATORY NO. 15:**

6       This Interrogatory calls for the identification of each instance in which the word

7  "UGG" was used to describe and/or identify any product distributed, offered for sale of

8  sold by Gina, regardless of whether any such use of the word "UGG" related to any of

9  the so-called Disputed Products.  Gina objected to this Interrogatory on the grounds

10  that it is not reasonably calculated to lead to the discovery of admissible evidence and

11  seeks information not relevant to the subject matter of this lawsuit — *i.e.*, Gina's

12  alleged infringement of Deckers' purported Bailey Button Boot Trade Dress and/or

13  Bailey Button Design Patents.  During the meet and confer process, Gina proposed to

14  identify instances, if any, where the word "UGG" was used to describe and/or identify

15  any of the so-called Disputed Products, since this is the only information which might

16  conceivably be relevant to establishing Gina's intent with respect to Deckers' claims

17  regarding the so-called Disputed Products.  Deckers rejected this proposal.

18       The zealous overreach of this Interrogatory appears to be grounded in Deckers'

19  fundamental misunderstanding of the scope of discovery permissible under Federal

20  Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery

21  regarding any nonprivileged matter that is relevant to any party's claim or defense."

22  Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject

23  to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the

24  requested discovery is not apparent, "it is the burden of the party seeking discovery to

25  show the relevancy of the request."  *Krause v. Nevada Mutual Ins. Co.*,  2014 WL

26  496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the

27  alleged infringement of its one button and three button Bailey Boot Design.  Deckers

28  has failed to meet this threshold burden of showing the relevance of this Interrogatory

1    "to [its] claim[s]", as it does not even attempt to articulate the relevance of Gina's use

2    of the term "UGG" to describe products that have no relation to Deckers' purported

3    Bailey Button Boot Trade Dress and/or Bailey Button Design Patents.  Deckers'

4    application should be denied on this basis alone.

5         Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–*

6    *Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL

7    4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly

8    construed, and a request for discovery should be considered relevant if there is any

9    possibility that the information sought may be relevant to the claim or defense of any

10   party", it disagrees with the misleading gloss Deckers attempts to place on this

11   language, and notes Deckers' failure to acknowledge the significance of the critical

12   clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the

13   *claim or defense* of any party".

14        As the court explained in *Bernstein v. Travelers Ins. Co.*:

15             It is not immaterial to the issues we address here that in the year

16             2000 the judiciary and Congress made changes in the language

17             of Rule 26(b) that clearly were intended to pull back the

18             presumptive outer relevance-boundaries of civil discovery.  The

19             change that most obviously signaled this intent consisted of

20             substituting the words "claim or defense" for the phrase "subject

21             matter involved in the pending action" in the general description

22             of the presumptively permissible scope of discovery.  Fed. R.

23             Civ. P. 26(b).  The Advisory Committee Notes that

24             accompanied these amendments report that the primary target of

25             the changes was discovery that swept "far beyond the claims

26             and defenses of the parties," discovery that imposed

27             unjustifiable expenses and delays and that sometimes seemed

28             designed not to fairly litigate the issues presented by the

1    pleadings but to "develop new claims or defenses." Fed. R. Civ.

2    Pro. 26(b) advisory committee's note to amendments effective

3    December 1, 2000.  Stated more crudely, ***the primary purposes***

4    ***of the changes were to discourage lawyers from using***

5    ***discovery to "fish" for new claims or defenses and/or to run up***

6    ***unjustifiable litigation bills***.

7    *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

8    (emphasis added).

9        The Advisory Committee's Notes to Amendments Effective December 1, 2000,

10   put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

11   "signals to the parties that they have ***no entitlement to discovery to develop new***

12   ***claims*** or defenses that are not already identified in the pleadings."  Emphasis added.

13   *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

14   Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

15   that may expose the defendant to claims not previously asserted in the plaintiff's

16   complaint.").  In other words, "[f]ishing expeditions to discover new claims … are not

17   permitted."  *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

18   Yet, this is precisely what Deckers is attempting to embark on here.

19       In addition, as Gina explained during the meet and confer process (*see* Chan

20   Decl. Ex. 7), any use of the word "UGG" that does not relate to Gina's design,

21   promotion or sale of the so-called Disputed Products, would reveal nothing about

22   Gina's intent to infringe Deckers' purported rights with respect to the footwear designs

23   at issue in this case.  In response, Deckers merely proclaims that relevancy is to be

24   broadly construed, and argues that "*any* instances wherein Gina Group has used the

25   "UGG" mark to describe or identify its products, whether it be with respect to the

26   specific disputed products at issue or not, is relevant."

27       Not surprisingly, the cases Deckers cites in support of this novel proposition —

28   *Independent Living Center of Southern California v. City of Los Angeles, Cal.*, 296

79

1   F.R.D. 632, 635 (C.D. Cal. 2013), *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D.

2   611, 615 (N.D. Cal. 2011) and *Kimberly-Clark Worldwide, Inc. v. First Quality Baby*

3   *Products, LLC*, 2011 WL 4738110 (M.D. Pa. Oct. 6, 2011) — lend zero support to

4   Deckers' contention that Gina's mere mention of the word "UGG" in connection with

5   one of its products, regardless of whether the use relates to one of the so-called

6   Disputed Products, would be relevant, despite the fact that this is a design infringement

7   case, and that Deckers has not asserted any claims against Gina with respect to its

8   "UGG" trademark.

9       In any case, Deckers' argument in support of this Interrogatory boils down to its

10  conclusory assertion that it may establish Gina's willful intent to infringe Deckers'

11  purported Bailey Button Boot Trade Dress and/or Bailey Button Design Patents in this

12  case, by demonstrating that Gina has previously considered or reviewed entirely

13  unrelated UGG-branded products in the development of footwear products that are not

14  the subject of Deckers' infringement claims, and otherwise have not been challenged

15  by Deckers.  There is simply no precedent that would permit Deckers to troll Gina's

16  records in the hopes of finding a basis for additional claims, and then shoehorning

17  those unaccused prior wrongful acts into evidence of Gina's willful intent to infringe

18  Deckers' purported Bailey Button Boot Trade Dress and/or Bailey Button Design

19  Patents.  Any such conduct would fall far short of the type of prior wrongful acts that

20  may be admissible under Federal Rule of Evidence 404(b)(2), and, accordingly, the

21  discovery Deckers seeks, to the extent it even exists, would not be admissible to

22  establish Gina's intent (or for any other purpose) here.

23      Furthermore, Deckers' arguments in support of this Interrogatory appear to

24  hinge on the false premise that Deckers has asserted a trademark infringement claim

25  against Gina with respect to its purported use of the UGG word mark.  To be clear,

26  Deckers has asserted no such claim against Gina.  In any event, even if it had, this

27  Interrogatory would still be overly broad and irrelevant because it calls for the

28  identification of each instance in which Gina has used the *word* "UGG" in reference to

1    one of its products, and is not limited to any use of the *trademark* UGG to refer to

2    Deckers.  The word "ugg" is a generic descriptor for a sheepskin-style boot design that

3    Deckers owns no rights to.  *See* Ederer Decl. ¶¶ 2-3, Exs. B-C.  Accordingly, Gina's

4    use, if any, of the word "ugg" in its descriptive sense would have no relevance to the

5    design infringement claims at issue in this case.

6       This Interrogatory is nothing more than an attempt "to 'fish' for new claims or

7    defenses and/or to run up unjustifiable litigation bills", neither of which is permitted

8    under Rule 26(b).  *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D.

9    Cal. 2006).  Deckers is not entitled to this irrelevant discovery.  *See Monte H.*

10   *Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests seeking

11   irrelevant information are inherently undue and burdensome.").

12   **DECKERS' SPECIAL INTERROGATORY NO. 17:**

13       IDENTIFY any procedures or steps GINA takes to ensure that its products do

14   not infringe upon the intellectual property of others.

15   **GINA GROUP'S RESPONSE TO SPECIAL INTERROGATORY NO. 17:**

16       Gina Group incorporates by reference the above –stated General Objections as if

17   fully set forth herein. Gina Group further objects to this Interrogatory on the grounds

18   that it is overly broad and unduly burdensome in that it is not reasonably calculated to

19   lead to the discovery of admissible evidence and seeks information that is not relevant

20   to the subject matter of this lawsuit. Gina Group further objects to this Interrogatory on

21   the basis that it is vague, including as to time.

22   **DECKERS' CONTENTIONS RE SPECIAL INTERROGATORY NO. 17:**

23       At the outset, Gina Group's boilerplate objections are unsubstantiated.  General

24   or boilerplate objections are improper-especially when a party fails to submit any

25   evidentiary declarations supporting such objections. [Paulsen v. Case Corp., 168

26   F.R.D. 285, 289 (C.D.Cal.1996); see also McLeod, Alexander, Powel & Apffel, P.C. v.

27   Quarles, 894 F.2d 1482, 1485 (5th Cir.1990) (objections that document requests were

28   overly broad, burdensome, oppressive, and irrelevant were insufficient to meet

1  objecting party's burden of explaining why discovery requests were objectionable);

2  Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir.,1985)

3  (conclusory recitations of expense and burdensomeness are not sufficiently specific to

4  demonstrate why requested discovery is objectionable); Josephs v. Harris Corp., 677

5  F.2d 985,992 (3rd Cir.1982) ("mere statement by a party that the interrogatory was

6  overly broad, burdensome, oppressive and irrelevant" is not adequate to voice a

7  successful objection")]  Furthermore, "[t]he responding party must exercise reason and

8  common sense in answering discovery. If necessary, the responding party may provide

9  definitions in order to clarify their answers." [Brown v. Castillo, 2006 WL 1480444

10  (E.D.Cal., 2006); Pulsecard, Inc. v. Discover Card Services, Inc., 168 F.R.D. 295, 310

11  (D. Kan., 1996)]

12      Gina Group's protocol or procedure to avoid infringement of the intellectual

13  property of others, to the extent it implements such a procedure, is relevant to issues of

14  willfulness.  Thus, for example, if Gina Group has a protocol or procedure to avoid

15  infringement, and did not follow such a protocol in the present situation with respect to

16  the Disputed Products, this may be probative of willfulness/willful blindness.  [Louis

17  Vuitton S.A. v. Lee, 875 F.2d 584, 590 (7th Cir.1989) ("[w]illful blindness is

18  knowledge enough.");  Viacom Intern., Inc. v. YouTube, Inc., 676 F.3d 19 (2d Cir.,

19  2012) ("Willful blindness is tantamount to knowledge.")]

20      Gina Group has not articulated any basis for its objections, and thus, should be

21  compelled to provide a full and complete response to this Interrogatory accordingly.

22  **GINA GROUP'S CONTENTIONS RE SPECIAL INTERROGATORY NO. 17:**

23      This Interrogatory calls for the identification of any steps of procedures Gina

24  takes to ensure that it does not infringe the upon the intellectual property rights of third

25  parties.  Gina objected to this Interrogatory on the grounds that it is overly broad and

26  unduly burdensome in that it is not reasonably calculated to lead to the discovery of

27  admissible evidence and seeks information not relevant to the subject matter of this

28  lawsuit — i.e., Gina's alleged infringement of Deckers' purported Bailey Button Boot

1  Trade Dress and/or Bailey Button Design Patents.  During the meet and confer process,

2  Gina proposed to identify the procedures or steps, if any, that Gina may have taken

3  with respect to the so-called Disputed Products, since this is the only information

4  which might conceivably be relevant to establishing Gina's intent with respect to

5  Deckers' claims regarding the so-called Disputed Products.  Deckers rejected this

6  proposal.

7       The zealous overreach of this Interrogatory appears to be grounded in Deckers'

8  fundamental misunderstanding of the scope of discovery permissible under Federal

9  Rule of Civil Procedure 26(b)(1) — namely, that "[p]arties may obtain discovery

10  regarding any nonprivileged matter that is relevant to any party's claim or defense."

11  Fed. R. Civ. P. 26(b)(1).  Contrary to Deckers' interpretation, this principle "is subject

12  to limitation" (*Rivera*, 364 F.3d at 1063), and, where, as here, the relevancy of the

13  requested discovery is not apparent, "it is the burden of the party seeking discovery to

14  show the relevancy of the request." *Krause v. Nevada Mutual Ins. Co.*,  2014 WL

15  496936, *3 (D. Nev. Feb. 6, 2014).  In this case, Deckers' only "claims" relate to the

16  alleged infringement of its one button and three button Bailey Boot Design.  Deckers

17  has failed to meet this threshold burden of showing the relevance of this Interrogatory

18  "to [its] claim[s]", as it does not even attempt to articulate the relevance of any

19  procedures or steps Gina may have taken with respect any products other than the so-

20  called Disputed Products.  Deckers' application should be denied on this basis alone.

21       Moreover, while Gina does not dispute Deckers' citation to *In re Toys R Us–*

22  *Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2010 WL

23  4942645, *1 (C.D. Cal. 2010), for the general proposition that "[r]elevancy is broadly

24  construed, and a request for discovery should be considered relevant if there is any

25  possibility that the information sought may be relevant to the claim or defense of any

26  party", it disagrees with the misleading gloss Deckers attempts to place on this

27  language, and notes Deckers' failure to acknowledge the significance of the critical

28

1 clause of the language that it quotes — *i.e.*, that the discovery must be "relevant to the

2 ***claim or defense*** of any party".

3       As the court explained in *Bernstein v. Travelers Ins. Co.*:

4       It is not immaterial to the issues we address here that in the year

5       2000 the judiciary and Congress made changes in the language

6       of Rule 26(b) that clearly were intended to pull back the

7       presumptive outer relevance-boundaries of civil discovery.  The

8       change that most obviously signaled this intent consisted of

9       substituting the words "claim or defense" for the phrase "subject

10       matter involved in the pending action" in the general description

11       of the presumptively permissible scope of discovery.  Fed. R.

12       Civ. P. 26(b).  The Advisory Committee Notes that

13       accompanied these amendments report that the primary target of

14       the changes was discovery that swept "far beyond the claims

15       and defenses of the parties," discovery that imposed

16       unjustifiable expenses and delays and that sometimes seemed

17       designed not to fairly litigate the issues presented by the

18       pleadings but to "develop new claims or defenses." Fed. R. Civ.

19       Pro. 26(b) advisory committee's note to amendments effective

20       December 1, 2000.  Stated more crudely, ***the primary purposes***

21       ***of the changes were to discourage lawyers from using***

22       ***discovery to "fish" for new claims or defenses and/or to run up***

23       ***unjustifiable litigation bills***.

24 *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D. Cal. 2006)

25 (emphasis added).

26       The Advisory Committee's Notes to Amendments Effective December 1, 2000,

27 put an even finer touch on this issue, explaining that the amendment to Rule 26(b)

28 "signals to the parties that they have ***no entitlement to discovery to develop new***

1    ***claims*** or defenses that are not already identified in the pleadings." Emphasis added.

2    *See also Monte H. Greenawalt Revocable Trust v. Brown*, 2013 WL 6844760, *3 (D.

3    Nev. Dec. 19, 2013) ("This prevents litigants from engaging in "fishing expeditions"

4    that may expose the defendant to claims not previously asserted in the plaintiff's

5    complaint."). In other words, "[f]ishing expeditions to discover new claims … are not

6    permitted." *Bryant v. Mattel, Inc.*, 2007 WL 5432959, *3 (C.D. Cal. Apr. 19, 2007).

7    Yet, this is precisely what Deckers is attempting to embark on here.

8          This Interrogatory is nothing more than an attempt "to 'fish' for new claims or

9    defenses and/or to run up unjustifiable litigation bills", neither of which is permitted

10    under Rule 26(b). *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1102 (N.D.

11    Cal. 2006). Deckers is not entitled to this irrelevant discovery. *See Monte H.*

12    *Greenawalt Revocable Trust*, 2013 WL 6844760, at *3 ("Discovery requests seeking

13    irrelevant information are inherently undue and burdensome.").

14          Subject to and without waiving the foregoing objections to this Interrogatory,

15    Gina is prepared to supplement its response to this Interrogatory to indicate that, as of

16    the commencement of this case, it had no formal procedures or steps in place with

17    respect to the clearance of footwear designs for intellectual property purposes.

18

19    DATED:      July 29, 2014            BLAKELY LAW GROUP

20

21                                        By:   */s/ Cindy Chan*_____

22                                              Brent H. Blakely_____
                                                Cindy Chan

23                                              ***Attorneys for Plaintiff***
                                                ***Deckers Outdoor Corporation***

24    DATED:      July 29, 2014            ARNOLD & PORTER

25

26                                        By:   */s/ Louis Ederer*_____

27                                              Louis Ederer (*admitted pro hac vice*)
                                                ***Attorneys for Defendant***

28                                              ***Gina Group LLC***